Bert Randolph SUGAR and Wrestling
Revue, Inc., Plaintiffs,

v.

CURTIS CIRCULATION COMPANY,
Defendants.

No. 74 Civ. 78.

United States District Court,
S. D. New York.

June 17, 1974.

Levy & Ledes, New York City, for plaintiffs.

Young, Sonnenfeld & Busner, New York City, for defendant Curtis Circulation Co.

Gilbert, Segall & Young, New York City, for defendant National Sports Publishing Corp.

## MEMORANDUM

LASKER, District Judge.

In recent years, the constitutionality of statutes permitting the *ex parte* prejudgment seizure of property has been increasingly open to question. In this suit, plaintiffs seek injunctive and declaratory relief against the enforcement of Article 62 of the Civil Practice Law and Rules ("CPLR") of the State of New York, which permits prejudgment attachment of property without prior notice or a hearing. Plaintiffs claim that CPLR §§ 6201(4), (5) and (8) and 6211 are unconstitutional on their face, because they permit a deprivation of property without due process of law in violation of the Fourteenth Amendment.

Plaintiffs request the convening of a three judge court pursuant to 28 U.S.C. §§ 2281 and 2284. Defendant, Curtis Circulation Company ("Curtis"), moves to dismiss on the grounds that 1) plaintiffs lack standing to sue because they have not been deprived of property by the operation of the statute; 2) they have waived their right to assert the constitutional claim raised here; and 3) there is a prior action pending in the state courts in which plaintiffs can obtain the full relief sought here.[1]

---

1. Curtis also sought a stay of this proceeding pending decision by the Supreme Court of a case relevant to the constitutional issue raised by plaintiffs. That decision having subsequently been rendered (Mitchell v. W. T. Grant Co., 416 U.S. 944, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974)), the motion for a stay is now denied as moot.

## I.

Plaintiff, Bert Sugar, controls two corporations which publish sports periodicals, Champion Sports Publishing Inc. ("Champion") and Wrestling Revue, Inc., ("Wrestling"), a plaintiff in this action. In August, 1971, Sugar and Champion entered into a written agreement with Curtis, pursuant to which the latter was to distribute periodicals for the former. Curtis subsequently made advances to Champion which it was entitled, under the agreement, to recoup from payments received by Champion from distribution of Champion's periodicals.

After the agreement had been in effect for over a year, by which time Champion was substantially indebted to Curtis, the latter became aware of facts which led it to believe that a fraud was being perpetrated on it by Sugar and his controlled corporations. In particular, Curtis learned that Wrestling was holding itself out as the owner of periodicals which Curtis was distributing for Champion and that Wrestling had contracted to sell some of these periodicals to third parties, the consideration for the sale to be received by Wrestling and not by Champion.

As a result of these discoveries, Curtis notified one of the parties with whom Wrestling had contracted, National Sports Publishing Corporation ("National"), a defendant here, that, by virtue of the sums owed it by Champion, it was asserting a claim for the money payable by National to Wrestling. On February 28, 1973, National informed Wrestling and Sugar that it was with-holding payment of a sum which became due on that date, because of the interest asserted by Curtis. On March 5, 1973, Wrestling sued National in the New York Supreme Court, Westchester County, on the ground that its failure to make the February 28th payment constituted a breach of their contract. On April 13, 1973, Curtis sued Sugar, Wrestling and Champion in the same court

for the sums owing under the distribution agreement. In that action, Curtis obtained an order attaching the funds withheld by National on April 16, 1973, and National paid the sum in question to the Sheriff in compliance with the order. The attachment order also covered money owed by National to Wrestling payable subsequent to the entry of the order. National has continued to pay over such sums to the Sheriff as they have become due. In May, the two Supreme Court actions were consolidated at the request of Sugar, Champion and Wrestling.

Thereafter, Sugar and Wrestling filed suit in this court claiming that the procedure by which the order of attachment was obtained violated their constitutional rights.

## II.

■ Based on these facts, Curtis moves to dismiss. In the first instance, it contends that plaintiffs do not have standing to challenge the attachment procedure as an unconstitutional deprivation of property, because the order of attachment which gives rise to their attack did not in fact deprive them of any property. The argument runs as follows: When National on February 28, 1973, informed plaintiffs of their intention to withhold payment of the money which it owed them pending determination of who, as between plaintiffs and Curtis, was entitled to receive it, plaintiffs did not have possession of the funds and thus their only recourse was to sue National for breach of contract, which they subsequently did in early March. This right, Curtis argues, was entirely unaffected by the order of attachment obtained by Curtis in the second state court proceeding; attachment merely substituted the Sheriff for National as the holder of the disputed funds. Accordingly, Curtis contends, it deprived plaintiffs of nothing and left them exactly as they were prior to

attachment.[2] Curtis argues further that dissolving the attachment would effectively decide the merits of the state court litigation by according plaintiffs possession of the funds, which they did not have prior to the state court litigation and the right to which constitutes the subject of the litigation.

The argument, although ingenious, overlooks a crucial point. Although plaintiffs' possession of the funds was blocked prior to attachment by National's decision to withhold payment, the subsequent attachment transformed the situation in a critical respect. The superimposition, at Curtis' behest, of judicial sanction on National's until then purely voluntary withholding of the money deprived plaintiffs and National of the ability to resolve their dispute. It is true that attachment did not destroy plaintiffs' right to sue National, a right which they had already exercised; however, it made the objective of the suit unattainable either by compromise or victory on the merits. As a result of the attachment, resolution of the National-Wrestling conflict would no longer have resulted in possession by Wrestling of the disputed funds, since National would have had an off-set to the extent of the amount paid over to the Sheriff. CPLR § 6204. Accordingly, Wrestling and National's theretofore private disagreement could no longer be worked out between themselves, but only in conjunction with a resolution of Curtis' dispute with Champion. Clearly, this result was precisely what Curtis intended in seeking the attachment, which it now argues was merely an empty gesture. It is noteworthy that the deprivation to plaintiffs of the ability to acquire possession of the funds through compromise with National, which at the time of attachment was only potential, is now actual, since Wrestling and National have

in fact reached a settlement of their dispute, which, were it not for the attachment order, would give Wrestling possession of the funds.

Nor is it correct, as Curtis argues, that dissolution of the attachment order would place plaintiffs in a better position than they were in prior to attachment. To the contrary, dissolving the attachment order would return the funds to National, and thus reconstitute the *status quo ante* attachment. National would then be free, now as before, to turn the money over to Wrestling or to continue to withhold it.

We turn to the other grounds asserted on the motion to dismiss, which are predicated on the existence of state court proceedings involving the same parties as are before us. Curtis argues that these proceedings require dismissal, because 1) plaintiffs' failure to assert their constitutional claim in state court constitutes a waiver precluding the suit in this court; 2) relegating plaintiffs to the state courts would further the interests of judicial economy; and 3) this court should abstain pending a determination by the state court.

 It is important, at the outset, to note that plaintiffs did not themselves initiate a state court proceeding in which it would have been possible to challenge the constitutionality of Article 62. The suit which plaintiffs brought was against National, not Curtis, and was brought prior to attachment. Since National was merely the garnishee, plaintiffs had no claim against it based on the validity of the attachment. Accordingly, the issue is reduced to whether the fact that Curtis sued plaintiffs obligated them to assert the claimed unconstitutionality of Article 62 as a defense in that proceeding and foreclosed them from commencing this suit.

**2.** Curtis' imaginative argument reminds us of a song popular in the thirties, "Life is Just a Bowl of Cherries," two of whose memorable lines ran :

"The sweet things in life, to you were
just loaned,
So how can you lose what you've
never owned."
© 1931 DeSylva, Brown & Henderson, Inc.

The parties have cited no cases which are exactly on point[3] nor has our research uncovered any. However, we find guidance in opinions dealing with the appropriateness of requiring exhaustion of remedies or abstaining in cases brought under § 1983.

The decisions are legion to the effect that exhaustion is not required in § 1983 cases. *See, e.g.,* Wilwording v. Swenson, 404 U.S. 249, 251, 92 S.Ct. 407, 30 L. Ed.2d 418 (1971) (per curiam); Damico v. California, 389 U.S. 416, 88 S.Ct. 526, 19 L.Ed.2d 647 (1967) (per curiam); Zwickler v. Koota, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967); McNeese v. Board of Education, 373 U.S. 668, 672, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); Monroe v. Pape, 365 U.S. 167, 183, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); Conover v. Montemuro, 477 F.2d 1073, 1079 (3d Cir. 1972); Stradley v. Andersen, 456 F.2d 1063 (8th Cir. 1972).

As the Court stated in Monroe v. Pape, *supra,* at 183:

> "It is no answer that the State has a law which if enforced would give relief. The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." *See also McNeese, supra,* 373 U.S. at 672.

and the Court of Appeals for the Eighth Circuit has observed:

> "The law is well-settled that in such cases the very purpose of § 1983 precludes forcing a forum choice on the plaintiff by requiring exhaustion of the state's avenues of litigation."
> Stradley v. Andersen, *supra.*

Requiring a plaintiff to resort *ab initio* to the state courts for redress of his federal constitutional rights is regarded as inconsistent with the intent of § 1983

to provide "a uniquely federal remedy against incursions under the claimed authority of state law upon rights secured by the Constitution and laws of the Nation." Mitchum v. Foster, 407 U.S. 225, 239, 92 S.Ct. 2151, 2160, 32 L.Ed.2d 705 (1972). Indeed, the premise underlying § 1983's adoption was that the state courts could not be relied upon to protect these rights:

> "[The] legislative history [of § 1983] makes evident that Congress clearly conceived that it was altering the relationship between the States and the Nation with respect to the protection of federally created rights; it was concerned that state instrumentalities could not protect those rights; it realized that state officers might, in fact, be antipathetic to the vindication of those rights; and it believed that these failings extended to the state courts.
>
> \* \* \* \* \* \*
>
> . . . The very purpose of § 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action under color of state law, 'whether that action be executive, legislative, or judicial.' " *Id.* at 242 (citation omitted).

The Supreme Court has also been emphatic in preserving the § 1983 plaintiff's right to a federal forum in cases in which the propriety of abstention has been at issue. In Zwickler v. Koota, holding abstention to have been improper, the Court said:

> "In thus expanding federal judicial power [by adopting § 1983], Congress imposed the duty upon all levels of the federal judiciary to give due respect to a suitor's choice of a federal forum for the hearing and decision of his

3. Curtis relies on Financial Services, Inc. v. Ferrandina, 474 F.2d 743 (2d Cir. 1973). However, that case is readily distinguishable. First, both suits involved in *Ferrandina* were in federal court, thus the plaintiff had the opportunity to air its constitutional claim in a federal forum in the earlier suits.

Second, the plaintiff in *Ferrandina* expressly postponed consideration of its constitutional claim to a later date. Third, the *Ferrandina* decision concerns a limited question of appealability and its discussion of waiver is dictum.

federal constitutional claims. Plainly, escape from that duty is not permissible merely because state courts also have the solemn responsibility, equally with the federal courts, '. . . to guard, enforce, and protect every right granted or secured by the constitution of the United States . . . .' Robb v. Connolly, 111 U.S. 624, 637 [4 S.Ct. 544, 551, 28 L.Ed. 542]. 'We yet like to believe that wherever the Federal courts sit, human rights under the Federal Constitution are always a proper subject for adjudication, and that we have not the right to decline the exercise of that jurisdiction simply because the rights asserted may be adjudicated in some other forum.'" 389 U.S. 241, 248 (1967) (citations omitted).

■ Of course, *Zwickler* and the exhaustion cases did not arise from situations in which litigation was actually pending before the state courts. However, it would not be sound law to apply a different rule to such instances either on the theory that the cases mentioned above were intended solely to avoid the delay and inconvenience to the plaintiff of requiring him to commence a new suit in state court, which is not present in a case such as this, or that a federal court should, as Curtis argues here, decline jurisdiction to avoid duplicity of effort when a state court action is actually in progress. Such contentions are untenable in light of the Supreme Court's holding, in England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), that a litigant who has been obliged by the abstention of a federal court to seek relief in the state courts cannot be precluded, without his consent, from returning to federal court to litigate his federal claims. As the Court stated:

"There are fundamental objections to any conclusion that a litigant who has properly invoked the jurisdiction of a Federal District Court to consider federal constitutional claims can be compelled, without his consent and

through no fault of his own, to accept instead a state court's determination of those claims. Such a result would be at war with the unqualified terms in which Congress, pursuant to constitutional authorization, has conferred specific categories of jurisdiction upon the federal courts, and with the principle that 'When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction . . . . The right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied.' " Willcox v. Consolidated Gas Co., 212 U.S. 19, 40 [29 S.Ct. 192, 53 L.Ed. 382]." *Id.* at 415 (footnote omitted).

■ In fact, in a footnote which is particularly *apropos* to this case, the Court noted:

"The reservation [of federal jurisdiction] may be made by any party to the litigation. Usually the plaintiff will have made the original choice to litigate in the federal court, but the defendant also, by virtue of the removal jurisdiction, 28 U.S.C. § 1441(b), has a right to litigate the federal question there. Once issue has been joined in the federal court, no party is entitled to insist, over another's objection, upon a binding state court determination of the federal question." *Id.* at 422, n. 13.

In the instant case, plaintiffs, who were defendants in the state court proceedings, did not have available to them the option of removal to the federal court, inasmuch as the federal claim arose only defensively. C. Wright, Law of Federal Courts 52 (1963). However, upon their bringing the federal claim to this court in their own suit, no reason is apparent for departing from the principle enunciated above. Furthermore, the fact that in this case, unlike *England*, the state forum has been imposed on plaintiffs by the opposing litigant rather than the federal court strengthens the argument for preserving their right to press their federal claim here.

■ It is noteworthy, moreover, that if plaintiffs had in fact asserted their federal constitutional claim in the state court proceeding, as Curtis insists they must, they would thereby have lost their right ever to litigate it in federal court. As the Court stated in *England*:

> "We now explicitly hold that if a party freely and without reservation submits his federal claims for decision by the state courts, litigates them there, and has them decided there, then— whether or not he seeks direct review of the state decision in this Court—he has elected to forgo his right to return to the District Court." 375 U.S. at 419.

Thus, defendant's position reduces itself to this: By the mere fact of being sued in state court, without which the order of attachment which is the *sine qua non* of this suit could not have issued, plaintiffs were placed in the position of either 1) waiving their federal claim by not asserting it in state court or 2) asserting it in state court and electing to forego their federal remedy. Such a position is incompatible with the purpose of § 1983, and we decline to adopt it.

■ Curtis further requests us to *abstain from exercising jurisdiction* and to dismiss in order to allow the state courts to adjudicate the issues raised here. Putting aside the very serious question of whether there is any justification for abstention, we note merely that it is the law in this Circuit that abstention is a question for decision by the three judge court. New York State Waterways Association, Inc. v. Diamond, 469 F.2d 419, 423 (2d Cir. 1972); Johnson v. Rockefeller, 58 F.R.D. 42, 48 (S. D.N.Y.1972).

### III.

■ We turn to plaintiffs' motion to *convene a three judge court* pursuant to 28 U.S.C. § 2281. The motion should be granted if the complaint at least formally alleges a basis for equitable relief and raises a substantial constitutional question (Idlewild Bon Voyage Liquor Corp.

v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962)), if it attacks a state statute's general application and names a state officer as a defendant (Ince v. Rockefeller, 290 F.Supp. 878, 881 (S.D.N.Y.1968)). The only prerequisite as to which there is an issue here is whether this case presents a substantial constitutional question.

■ The determination of that point hangs on whether or not the constitutional issue presented is foreclosed by decisions of the Supreme Court which are analogous to the case at hand. California Water Service Co. v. City of Redding, 304 U.S. 252, 255, 58 S.Ct. 865, 82 L.Ed. 1323 (1938). The "foreclosure" hurdle is not a high one. As the Supreme Court stated in Goosby v. Osser, 409 U.S. 512, 518, 93 S.Ct. 854, 858, 35 L.Ed.2d 36 (1973):

> " 'Constitutional insubstantiality' for this purpose has been equated with such concepts as 'essentially fictitious,' Bailey v. Patterson, 369 U.S. [31], at 33 [82 S.Ct. 549, 551, 7 L. Ed.2d 512]; 'wholly insubstantial,' *ibid.*; 'obviously frivolous,' Hannis Distilling Co. v. Baltimore, 216 U.S. 285, 288 [30 S.Ct. 326, 327, 54 L.Ed. 482] (1910); and 'obviously without merit,' Ex parte Poresky, 290 U.S. 30, 32 [54 S.Ct. 3, 4–5, 78 L.Ed. 152] (1933). The limiting words 'wholly' and 'obviously' have cogent legal significance. In the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial for the purposes of 28 U.S.C. § 2281. A claim is insubstantial only if ' "its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to versy." ' Ex parte Poresky, *supra,* at 32 [54 S.Ct., at 4], quoting from

Hannis Distilling Co. v. Baltimore, *supra*, [216 U.S.] at 288 [30 S.Ct., at 327]; see also Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105–106 [53 S.Ct. 549, 550, 77 L.Ed. 1062] (1933); McGilvra v. Ross, 215 U.S. 70, 80 [30 S.Ct. 27, 31, 54 L.Ed. 95] (1909)."

Curtis argues that even under *Goosby's* lenient standard, plaintiffs' claim is too insubstantial to require the convening of a three judge court, because the grounds for their challenge to the statute have been destroyed by the Supreme Court's recent decision in Mitchell v. W. T. Grant Co., 42 U.S.L.W. 4671 (U.S., May 13, 1974). In *Mitchell,* the Court upheld the constitutionality of the Louisiana sequestration statute in the face of an attack based on Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972), and Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969), the cases on which plaintiffs primarily rely.

Both *Fuentes* and *Mitchell* involved statutes permitting *ex parte* pre-judgment seizure of property pursuant to a vendor's lien. In *Fuentes,* two such statutes were declared invalid; in *Mitchell,* the statute was upheld.

The *Mitchell* Court distinguished *Fuentes* on several grounds. The sole factual distinction between *Fuentes* and *Mitchell* was that, in the latter, the Court found that the writ of sequestration was available only to avoid waste or alienation of the property subject to the lien with a corresponding risk of destruction or disposition of the property if notice was given to the purchaser-lienee. As to the procedural differences, the statute in *Mitchell* accorded the following protections not available under the statutes struck down in *Fuentes*: 1) The requirement of judicial approval of the sequestration order; 2) the necessity of clearly demonstrating the grounds for sequestration in the affidavit supporting the writ; 3) the posting of a bond by the attaching creditor; 4) the availability of a hearing and dissolution

of the attachment order unless the party obtaining sequestration proves the grounds underlying the order; and 5) the ability of the buyer to regain possession of the sequestered property by posting a bond.

Curtis argues that the strong similarity between the statute under attack here and the statute upheld in *Mitchell* requires a finding that the *Mitchell* decisions forecloses submitting plaintiffs' constitutional challenge to a three judge court. We agree that significant parallels exist between the two statutes. Like the Louisiana statute, the first of the three provisions of Article 62 of the CPLR, pursuant to which plaintiffs' property was seized, authorizes attachment where there is reason to fear that the debtor has or may place beyond the reach of the creditor property which could be used to satisfy the debt. This sub-section, CPLR § 6201(4), establishes as a ground for attachment that "the defendant, with intent to defraud his creditors, has assigned, disposed of or secreted property, or removed it from the state or is about to do any of these acts." The second provision challenged by plaintiffs, permitting attachment when "the defendant, in an action upon a contract, express or implied, has been guilty of a fraud in contracting or incurring the liability" (CPLR § 6201(5)), and the third, authorizing attachment if "there is a cause of action to recover damages for the conversion of personal property, or for fraud or deceit" (CPLR § 6201(8)), do not follow as closely the *Mitchell* justification of avoiding waste or destruction of property. Nonetheless, it presumably embodies the inference that fraudulent activity by a defendant giving rise to a lawsuit may indicate the defendant's willingness to commit fraud to avoid payment of a judgment resulting from the lawsuit.

More significant, however, are the procedural similarities between Article 62 and the *Mitchell* statute. Like the latter, the former provides for judicial approval of the attachment order based on a showing by affidavit and other

written evidence that there is a cause of action and that one or more grounds for attachment exist. CPLR § 6212(a). Like the creditor in *Mitchell*, the New York creditor must post a bond to indemnify the debtor for damages and legal fees in the event that the attachment proves not to be justified. CPLR § 6212(b). As in *Mitchell*, the New York statute provides that "[p]rior to the application of property or debt to the satisfaction of a judgment, any interested person may commence a special proceeding against the plaintiff to determine the rights of adverse claimants to the property or debt." CPLR § 6221. Furthermore, the statute, like that in *Mitchell*, enables a party whose property is attached to regain possession of it by giving an undertaking equal the value of the property or the debt. CPLR § 6222.

 However, notwithstanding the striking resemblance between the *Mitchell* statute and Article 62, we find that plaintiffs' challenge to the latter is not foreclosed by the Supreme Court's upholding of the former, because of two differences between *Mitchell* and the case at hand which are significant according to the *Goosby* test. First, *Mitchell* dealt with a situation in which the creditor, by virtue of a vendor's lien, had an actual possessory interest in the attached property. As the majority opinion in *Mitchell* states:

> "Plainly enough, this is not a case where the property sequestered by the court is exclusively the property of the defendant debtor. The question is not whether a debtor's property may be seized by his creditors, *pendente lite*, where they hold no present interest in the property sought to be seized." 42 U.S.L.W. at 4672–4673 [94 S.Ct. at 1898].

Second, the type of situation found in *Mitchell*, where the grounds for attachment—existence of a vendor's lien and default by the buyer—can readily be established on documentary evidence (42 U.S.L.W. at 4677), differs radically from the case at hand, where the basis for attachment—fraud—is not amenable to such proof.

These distinctions may seem slender in view of the broad language employed in parts of the *Mitchell* decision (see, particularly, Part II of the majority opinion). Nonetheless, we feel constrained to grant plaintiffs' motion to convene a three judge court in light of the breadth of the *Goosby* holding. We note further that even if this result were not required as to the total debt, under *Fuentes*, that part of the attachment which represents garnishment of plaintiff Sugar's wages might require submission of the case to a three judge court under *Sniadach*, whose precedential value as to such garnishment is unaffected by *Mitchell*. (*See* 42 U.S.L.W. at 4675–4676).

Accordingly, defendant's motion to dismiss is denied. Plaintiffs' motion to convene a three judge court is granted.

It is so ordered.