387 F.Supp. 630 (1975)
Harry VAIL, Jr., et al., Plaintiffs,
v.
Lawrence M. QUINLAN, Individually and in his capacity as Sheriff of Dutchess County, et al., Defendants.
No. 74 Civ. 4773 (JMC).
United States District Court, S. D. New York.
January 13, 1975.
*631 Mid-Hudson Valley Legal Services Project (Monroe County Legal Assistance Corp.), Poughkeepsie, N. Y., and Greater Up-State Law Project, Rochester, N. Y. (John D. Gorman, Jane E. Bloom, Poughkeepsie, N. Y., K. Wade Eaton and Rene H. Reixach, Jr., Rochester, N. Y., of counsel), for plaintiffs.
Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City (A. Seth Greenwald, Asst. Atty. Gen., of counsel), for defendants Juidice and Aldrich and pro se pursuant to New York Executive Law § 71.

MEMORANDUM DECISION
CANNELLA, District Judge:
This civil rights action, which is brought pursuant to 42 U.S.C. § 1983, asks that the Court declare unconstitutional and enjoin the enforcement of a panoply of sections contained in Article 19 of the New York Judiciary Law, McKinney's Consol.Laws, c. 30 (New York Judiciary Law §§ 756, 757, 765, 767, 769, 770-775) as being in derogation of the due process and equal protection clauses of the Fourteenth Amendment. It is presently before the Court on plaintiff's motion to convene a three-judge court pursuant to 28 U.S.C. §§ 2281 and 2284 and upon the defendant's cross-motion to dismiss the complaint for failure to state a claim upon which relief can be granted, Fed.R.Civ.P. 12(b)(6), upon a predicate finding by the Court that no substantial constitutional issue is raised. As the Court is of the view that the plaintiffs have satisfied the prerequisites for convening a three-judge court, their motion is hereby granted and, of course, the defendants' cross-motion is hereby denied.
The contours of the statutory scheme here at issue were recently well stated by one commentator. Alderman, Imprisonment for Debt: Default Judgments, The Contempt Power & The Effectiveness of Notice Provisions in the State of New York, 24 Syracuse L.Rev. 1217, 1222-24 (1973).
A money judgment is a special kind of debt which affords the judgment creditor remedies not available to other creditors. However, even money judgments do not collect themselves. In order to enforce his judgment the creditor either must locate and attach the debtor's assets, or, assuming no attachable assets, compel payment from the debtor himself.
In order to assist the judgment creditor in his search for assets, New York allows the judgment creditor to compel the judgment debtor to disclose the nature, value and location of all his assets. Section 5223 of the New *632 York Civil Practice Law & Rules (CPLR) provides that: "At any time before a judgment is satisfied or vacated, the judgment creditor may compel disclosure of all matter relevant to the satisfaction of the judgment." Section 5223 further provides that the disclosure shall be effectuated "by serving upon any person a subpoena . . .. [F]ailure to comply with the subpoena is punishable as a contempt of court."
Although three types of subpoenas are statutorily authorized, the most commonly used forms are (1) the subpoena requiring attendance of the debtor for the taking of a deposition, and (2) the information subpoena, which is accompanied by written questions to be answered and returned by the debtor. Upon service of either of these subpoenas the judgment debtor must, under penalty of contempt, comply with its directions. Assuming proper service by the judgment creditor and compliance by the judgment debtor, assets will be disclosed and the judgment satisfied. Alternatively, a disclosure of no attachable assets will temporarily appease the judgment creditor or force him to look elsewhere to satisfy the judgment. In the event that the judgment debtor fails to comply with the judgment creditor's subpoena, however, the CPLR provides that the debtor may be found in contempt and punished accordingly. The procedures that the judgment creditor must follow to have the recalcitrant debtor held in contempt are found in the judiciary law. [The statutes here challenged.] While the court has the power to punish the judgment debtor summarily, the practice generally followed in the case of nondisclosure is the issuance of a show cause order and a subsequent hearing to determine the guilt or innocence of the alleged contemnor.
In the event that the judgment debtor fails to appear at the show cause hearing he will be adjudged in contempt in absentia, the burden of proof having shifted to the debtor to show cause why he should not be held in contempt. After return of the show cause order and a determination that the judgment debtor is in contempt, the debtor may be fined an amount sufficient to indemnify the aggrieved creditor, or to pay him an amount not exceeding costs plus $250. Immediately thereafter a commitment order will issue, directing that the judgment debtor stand committed to the local jail until such time as the fine is paid. The judgment debtor may then remain incarcerated without the assignment of counsel or judicial review, for up to 90 days. The fine, when paid, is remitted directly by the court to the judgment creditor and is applied to the debt. [Footnotes omitted.][1]
As regards the precise factual allegations giving rise to the instant controversy the Court can be brief, as the facts advanced are squarely within the pattern of statutory enforcement suggested by Alderman, supra. Each plaintiff (as well as the proposed plaintiff-intervenor) is a judgment debtor who has failed to respond to or comply with a post-judgment discovery subpoena. Each has been served with an order to show cause requiring that he demonstrate why he should not be adjudged in contempt of court for failure to obey such subpoena and each has failed to appear at the show cause hearing. Accordingly, each was adjudged in contempt of court and, upon failure to pay the fine specified by the County Court in its contempt order, has been incarcerated or subjected to an immediate threat of incarceration pursuant to an ex parte commitment order issued in *633 compliance with § 756 of the Judiciary Law.
With this statutory and factual framework in mind, we turn to consider plaintiffs' motion to convene a three-judge court pursuant to 28 U.S.C. §§ 2281, 2284. As Judge Lasker has recently stated,
[t]he motion should be granted if the complaint at least formally alleges a basis for equitable relief and raises a substantial constitutional question (Idlewild Bon Voyage Liquor Corp. v. Epstein, 370 U.S. 713, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962)), if it attacks a state statute's general application and names a state officer as a defendant (Ince v. Rockefeller, 290 F.Supp. 878, 881 (S.D.N.Y.1968)).[1A]
Sugar v. Curtis Circulation Co., 377 F. Supp. 1055, 1061 (S.D.N.Y.1974). See also, Nieves v. Oswald, 477 F.2d 1109, 1111-1112 (2 Cir. 1973); 227 Book Center, Inc. v. Codd, 381 F.Supp. 1111, 1113 (S.D.N.Y.1974); Johnson v. Rockefeller, 58 F.R.D. 42, 48 (S.D.N.Y.1973). The only prerequisite to the convening of a three-judge court which the Attorney General alleges has not been met by plaintiffs, is whether this case gives rise to a substantial constitutional question.[2] We now turn to consider such issue.
A determination of substantiality in the present context "hangs on whether or not the constitutional issue presented is foreclosed by decisions of the Supreme Court which are analagous to the case at hand" and, as such, "[t]he `foreclosure' hurdle is not a high one." Sugar v. Curtis Circulation Co., 377 F.Supp. at 1061. The doctrine of "substantiality" was recently reviewed by the Supreme Court in Hagans v. Lavine, 415 U.S. 528, 536-538, 94 S.Ct. 1372, 1378, 39 L.Ed.2d 577 (1974) (in which the Court quoted extensively from its earlier opinion in Goosby v. Osser, 409 U.S. 512, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973)):
Over the years this Court has repeatedly held that the federal courts are without power to entertain claims otherwise within their jurisdiction if they are "so attenuated and unsubstantial as to be absolutely devoid of merit," Newburyport Water Co. v. Newburyport, 193 U.S. 561, 579, [24 S.Ct. 553, 557, 48 L.Ed. 795] (1904); "wholly insubstantial," Bailey v. Patterson, 369 U.S. 31, 33, [82 S.Ct. 549, 550-551, 7 L.Ed.2d 512] (1962); "obviously frivolous," Hannis Distilling Co. v. Baltimore, 216 U.S. 285, 288, [30 S.Ct. 326, 327, 54 L.Ed. 482] (1910); "plainly unsubstantial," Levering & Garrigues Co. v. Morrin, 289 U.S. 103, 105, [53 S.Ct. 549, 550, 77 L.Ed. 1062] (1933); or "no longer open to discussion," McGilvra v. Ross, 215 U.S. 70, 80, [30 S.Ct. 27, 31, 54 L.Ed. 95] (1909). One of the principal decisions on the subject, Ex parte Poresky, 290 U.S. 30, 31-32, [54 S.Ct. 3, 4-5, 78 L.Ed. 152] (1933), held, first, that "[i]n the absence of diversity of citizenship, it is essential to jurisdiction that a substantial federal question should be presented"; *634 second, that a three-judge court was not necessary to pass upon this initial question of jurisdiction; and third, that "[t]he question may be plainly unsubstantial, either because it is `obviously without merit' or because `its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the question sought to be raised can be the subject of controversy.' Levering & Garrigues Co. v. Morrin, supra; Hannis Distilling Co. v. Baltimore, 216 U. S. 285, 288, [30 S.Ct. 326, 54 L.Ed. 482]; McGilvra v. Ross, 215 U.S. 70, 80, [30 S.Ct. 27, 54 L.Ed. 95]."
Only recently this Court again reviewed this general question where it arose in the context of convening a three-judge court under 28 U.S.C. § 2281:
"`Constitutional insubstantiality' for this purpose has been equated with such concepts as `essentially fictitious,' Bailey v. Patterson, 369 U.S., at 33; [82 S.Ct.] (549) [7 L.Ed.2d 512;] `wholly insubstantial,' ibid.; `obviously frivolous,' Hannis Distilling Co. v. Baltimore, 216 U.S. 285, 288, [30 S.Ct. 326, 327, 54 L.Ed. 482] (1910); and `obviously without merit,' Ex parte Poresky, 290 U.S. 30, 32, [54 S.Ct. 3, 4-5, 78 L.Ed. 152] (1933). The limiting words `wholly' and `obviously' have cogent legal significance. In the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial for the purposes of 28 U.S.C. § 2281. A claim is insubstantial only if `"its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy"' (Citations omitted)." Goosby v. Osser, 409 U.S. 512, 518, [93 S.Ct. 854, 35 L.Ed.2d 36] (1973).
See also, Glover v. McMurray, 507 F.2d 1325, 1326 (2 Cir. 1974); Rosenthal v. Bd. of Educ., 497 F.2d 726, 729-730 (2 Cir. 1974). In light of this standard, which, as Judge Lasker has noted, "is not a high one," the defendants' assertion that the present complaint does not give rise to substantial constitutional questions is perceived by this Court as wholly spurious. Be that as it may, we briefly address such challenge.
As was noted above, plaintiffs seek a declaration that §§ 756, 757, 765, 767 and 769-775 of the New York Judiciary Law are unconstitutional in that they contravene the Fourteenth Amendment's guarantee of due process and equal protection of the laws. In support of their position, plaintiffs have advanced numerous challenges to the statutory scheme. In particular, they allege that the statutory scheme embraced in the challenged sections is unconstitutional because: (1) these statutes provide for notice which is insufficient to apprise debtors of the possible ramifications of their failure to appear at a show cause hearing; (2) due process requires that counsel be appointed for indigent debtors prior to their commitment for contempt; (3) due process requires that debtors be afforded notice and a hearing prior to the issuance of a warrant of commitment and that they be afforded a right to an allocution by the court prior to confinement; (4) due process bars the imposition of a fine for civil contempt which is neither coercive nor compensatory; and (5) the imprisonment of indigent debtors for failure to pay a civil contempt fine deprives such persons of equal protection of the laws.
While it is not the proper function of this Court to determine now which, if any, of these allegations might be possessed of merit in the ultimate, none of these claims can be viewed as *635 insubstantial in a constitutional sense. This Court has found no case in the Supreme Court,[3] or elsewhere, which either directly or by analogy unfavorably disposes of the contentions advanced by the plaintiffs. Indeed, the cases relied upon by the Attorney General to support his position, Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Tate v. Short, 401 U.S. 395, 91 S.Ct. 668, 28 L.Ed.2d 130 (1971); Williams v. Illinois, 399 U.S. 235, 90 S.Ct. 2018, 26 L.Ed.2d 586 (1970); and Desmond v. Hachey, 315 F.Supp. 328 (D. Me.1970), to the extent that they are relevant, can only be said to support the plaintiffs' claims. Rather than being "so attenuated and unsubstantial as to be devoid of merit," "no longer open to discussion," "wholly insubstantial," "obviously frivolous," "plainly unsubstantial," or foreclosed by earlier decisions, the issues raised by the instant case are perceived by this Court as giving rise to real, viable and substantial constitutional controversies, the resolution of which are far from settled and are clearly not free of doubt or rendered frivolous by the prior decisions of the Supreme Court. We are presented with issues which are wholly appropriate subjects for adjudication by a three-judge court.[4]
The substantiality of the issues raised herein is manifested by reference to numerous decisions of the Supreme Court,[5] as well as to the several lower federal court and state court opinions which have addressed questions of like or analagous nature. See, e. g., Non-Resident Taxpayers Association v. Murray, 347 F.Supp. 399 (E.D.Pa.1972) (three-judge court), aff'd mem., 410 U. S. 919, 93 S.Ct. 1356, 35 L.Ed.2d 581 (1973) (challenge to Pennsylvania statute governing issuance of a writ of capias ad respondendum); Desmond v. Hachey, 315 F.Supp. 328 (D.Me.1970) (declaring unconstitutional a Maine law which permitted the arrest and incarceration, without hearing, of a judgment *636 debtor who had failed to obey a disclosure subpoena); Otton v. Zaborac, 525 P.2d 537 (Alaska Sup.Ct.1974) (right of indigent faced with adjudication of civil contempt in non-support context to appointed counsel); Sodones v. Sodones, 314 N.E.2d 906 (Mass.Sup.Jud.Ct.1974) (due process in civil contempt context); Yoder v. County of Cumberland, 278 A. 2d 379 (Me.Sup.Ct.1971) (summary incarceration of debtor without hearing held unconstitutional); Perlmutter v. DeRowe, 58 N.J. 5, 274 A.2d 283 (1971) (New Jersey ca. re. practice read to require that debtor be brought before a judge immediately upon his arrest based upon an ex parte writ); In re Harris, 69 Cal.2d 486, 72 Cal.Rptr. 340, 446 P.2d 148 (1968) (California "mesne process of civil arrest without opportunity to be heard with the assistance of counsel is not due process." 72 Cal.Rptr. at 344, 446 P.2d at 152.); but see, Carter v. Lynch, 429 F.2d 154 (4 Cir. 1970) (a pre-Fuentes decision). See also, Alderman, supra, 24 Syracuse L.Rev. at 1239-1247; Countryman, The Bill of Rights and The Bill Collector, 15 Ariz. L.Rev. 521, 567-72 (1973); Comment, Imprisonment for Debt and the Constitution, 1970 L. & Soc.Order 659.
If any qualms concerning the substantiality of the constitutional issues presented in this litigation remain with the reader after careful consideration of the above noted authorities, surely the following passage from the Court's opinion in Fuentes v. Shevin, 407 U.S. 67, 81, 92 S.Ct. 1983, 1994, 32 L.Ed.2d 556 (1972) (whatever its vitality in light of Mitchell v. W. T. Grant, 416 U.S. 600, 94 S.Ct. 1895, 40 L.Ed.2d 406 (1974)) places them at rest.
The requirement of notice and an opportunity to be heard raises no impenetrable barrier to the taking of a person's possessions. But the fair process of decision making that it guarantees works, by itself, to protect against arbitrary deprivation of property. For when a person has an opportunity to speak up in his own defense, and when the State must listen to what he has to say, substantively unfair and simply mistaken deprivations of property interests can be prevented. It has long been recognized that "fairness can rarely be obtained by secret, one-sided determination of facts decisive of rights. . . . [And n]o better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it." (Citation omitted).
If such procedural rights must be accorded to one who is subject to a deprivation of property rights, then, clearly, substantial constitutional issues are presented with regard to one who is subject to incarceration as a result of the statutory scheme embraced in Article 19 of the New York Judiciary Law. See also, Desmond v. Hachey, supra, 315 F. Supp. at 333.
Having thus concluded that plaintiffs have raised substantial constitutional questions and have otherwise met the prerequisites of the three-judge court statute, 28 U.S.C. §§ 2281, 2284, only one further point raised by the Attorney General detains us from notifying Chief Judge Kaufman of the pendency of this cause, and then, only briefly. In his Brief (at 6-7) the Attorney General states: "Assuming arguendo, that the state court proceedings are `criminal' and plaintiffs are entitled to the asserted rights, there are pending state court proceedings (supplementary to judgment) which, if plaintiffs only would appear  even once , their rights, whatever they may be, could be vindicated. In the meanwhile, principles of equity, comity and federalism should prevail. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L. Ed.2d 688 (1971); as to civil matters, Gibson v. Berryhill, 411 U.S. 564, 93 S. Ct. 1689, 36 L.Ed.2d 488 (1973)." However, the sections and procedures subject to attack in this lawsuit, are not "criminal" in nature, but rather, are "civil" and result in the imposition of civil contempt *637 sanctions and this has been long recognized by the courts of the State of New York. See, e. g., King v. Barnes, 113 N.Y. 476, 21 N.E. 182 (1889); Feinberg v. Kutcosky, 147 App.Div. 393, 132 N.Y.S. 9 (3rd Dept. 1911) ("Failure to originally appear for examination in pursuance of an order in supplementary proceedings, or upon an adjourned day is a civil contempt, and not a criminal one . . .." 132 N.Y.S. at 10.); Samuels v. Ganz, 174 Misc. 399, 21 N.Y. S.2d 268 (Sup.Ct.1940). (Indeed § 753 is entitled "Power of courts to punish for civil contempts.") As Judge Smith has recently noted, the strict rule of Younger and its progeny has no place in these circumstances.
It must be remembered, however, that the Supreme Court has thus far refused to extend Younger to cases involving state civil proceedings. See, Gibson v. Berryhill, 411 U.S. 564, 573-576, 93 S.Ct. 1689, 36 L.Ed.2d 488 (1973); California v. LaRue, 409 U.S. 109, 124 n. 2, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972) (Marshall, J., dissenting); Mitchum v. Foster, 407 U.S. 225, 244, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972) (Burger, C. J., concurring); Younger v. Harris, 401 U.S. 37, 55, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971) (Stewart, J., concurring).
We are, therefore, unwilling to endorse the district court's view . . . that a support action is so "quasi-criminal" as to bring it within the strict ambit of Younger.5
5 As the district court noted, the state's characterization of the proceedings will at least partially determine Younger's applicability. (citations omitted). Here it is clear that contemporary New York law views the support proceedings at issue as "civil." (Citations omitted).
. . . [W]e do believe that the particularly stringent formulation of . . . Younger should be limited, at least until the Court instructs otherwise, to cases involving traditionally criminal proceedings.
Blouin v. Dembitz, 489 F.2d 488, 490-491 (2 Cir. 1973). See also, Polk v. State Bar of Texas, 480 F.2d 998, 1002 (5 Cir. 1973), quoting from, Palaio v. McAuliffe, 466 F.2d 1230 (5 Cir. 1972) ("the principles of Younger bar federal intervention in a state civil proceeding that is an integral part of state's enforcement of its criminal laws."). Cf., Allee v. Medrano, 416 U.S. 802, 94 S.Ct. 2191, 40 L.Ed.2d 566 (1974); Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).
This Court is of the view that while plaintiffs seek to imbue civil contempt proceedings involving judgment debtors with certain of the elements usually associated with the criminal law, such proceedings as are now ongoing in the state courts do not, for that reason, become "criminal" in nature and, as such, an assumption arguendo to the contrary and dismissal under the doctrine of Younger and its progeny is not warranted.[6]
*638 For all of the reasons aforestated, plaintiffs' motion to convene a three-judge court pursuant to 28 U.S.C. §§ 2281 and 2284 is hereby granted and this Court will so advise Chief Judge Kaufman. The defendants' motion to dismiss is hereby denied.
It is so ordered.
NOTES
[1] See, in addition to the Judiciary Law sections here in suit, N.Y. CPLR 5223 and 5251; 6 J. Weinstein, H. Korn and A. Miller, New York Civil Practice ¶ 5251.01 et seq. (1973); 10 Carmody Wait 2d § 64:376 (1966) and 22 Carmody Wait 2d § 140:38 et seq. (particularly §§ 140:133-140:137).
[1A] Even more recently, the Supreme Court has restated "the several conditions precedent to convening a three-judge court under 28 U.S.C. §§ 2281 and 2284" as being:

the constitutional question raised [is] substantial; the action [seeks] to enjoin a state official from executing statutes of statewide application; and the complaint at least formally allege[s] a basis for equitable relief.
Gonzalez v. Automatic Employees Credit Union, 419 U.S. 90, 95 S.Ct. 289, 292, 42 L. Ed.2d 249 (1974).
[2] It is plain from reading the complaint, as well as from what is said above, that a basis for equitable relief has been formally alleged by plaintiffs and that this action attacks a state statute's general application. Additionally, while defendant Quinlan, the Sheriff of Dutchess County and defendants Juidice and Aldrich, Judges of the Dutchess County Court, are "local officers" under the provisions of § 2 of the New York Public Officers Law, McKinney's Consol.Laws, c. 47, it has long been recognized that they are "state officers" for purposes of the instant standard. Spielman Motor Co. v. Dodge, 295 U.S. 89, 92-95, 55 S.Ct. 678, 79 L.Ed. 1322 (1935). See also, Board of Regents v. New Left Education Project, 404 U.S. 541, 544 n. 2, 92 S.Ct. 652, 30 L.Ed.2d 697 (1972).
[3] Cf., Endicott Johnson Corp. v. Encyclopedia Press, Inc., 266 U.S. 285, 45 S.Ct. 61, 69 L.Ed. 288 (1924). In Endicott Johnson, at 288-290, 45 S.Ct. 61, it was held that the opportunity of a defendant to appear and to contest the entry of a judgment which adjudicated his civil obligation to pay money was sufficient to render unnecessary further notice or hearing before the judgment creditor might resort to a form of execution by which property of the debtor would be summarily applied in satisfaction of the judgment. While the continued vitality of Endicott Johnson is doubtful, see, Hanner v. DeMarcus, 390 U.S. 736, 88 S.Ct. 1437, 20 L.Ed.2d 270 (1968) (Douglas, J. dissenting from dismissal of writ of certiorari as improvidently granted), its holding is plainly distinguishable from the matter at bar. This is because the civil contempt provisions here at issue concern themselves with proceedings supplementary to the entry of judgment and involve a new and separate adjudication arising not from the debt but rather, from a failure to obey the disclosure subpoena. Here, the determination goes to an individual's liberty, not merely his property, and, for that reason alone, Endicott Johnson can not control. See, Desmond v. Hachey, 315 F. Supp. 328 at 332; Yoder v. County of Cumberland, 278 A.2d 379, 387 and n. 5 (Me.Sup. Ct.1971).
[4] This is not to say that the three-judge panel might not ultimately decide to invoke one of the abstention doctrines in the present case. However, such decision is for the panel, and not for this Court, as a single judge, to make. See, discussion at n. 6 infra.
[5] While the citation of Supreme Court decisions which might arguably support the claims raised in this suit (in addition to those already cited) would expand over several pages, the following representative cases may assist the reader in focusing upon the issues presented. See, e. g., Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973); Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); Groppi v. Leslie, 404 U.S. 496, 92 S.Ct. 582, 30 L.Ed.2d 632 (1972); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); Shillitani v. United States, 384 U.S. 364, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966); In re Oliver, 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948).
[6] This is not to suggest that the principles enunciated in Younger and its progeny, together with other abstention doctrines, may not be invoked by the panel in the exercise of its discretion. Rather, we conclude only that the doctrine of absolute bar to federal court adjudication in instances where state criminal proceedings are presently pending (absent exceptional circumstances) contained in Younger and the subsequent decisions does not foreclose our consideration of the instant case. As the Supreme Court recently stated:

A three-judge court . . . is normally required even if the decision is to dismiss under Younger-Samuels principles, since an exercise of discretion will usually be necessary, see Jones v. Wade, 479 F.2d 1176, 1180 (5 [Cir.] 1973); Abele v. Markle, 452 F.2d 1121, 1125 (2 [Cir.] 1971); see generally Note, The Three-Judge District Court: Scope and Procedure under Section 2281, 77 Harv.L.Rev. 299, 309 (1963).
Steffel v. Thompson, 415 U.S. at 457 n. 7, 94 S.Ct. at 1214. This statement of the Court is in full accord with the earlier decisions in this Circuit and District. New York State Waterways Assn., Inc. v. Diamond, 469 F.2d 419, 423 (2 Cir. 1972) ("The decision to abstain is for the three-judge court, not for the single judge."); Abele v. Markle, 452 F. 2d 1121, 1125 (2 Cir. 1971); Snead v. Dept. of Social Services, 351 F.Supp. 1360, 1366 (S.D.N.Y.1972); Johnson v. Rockefeller, 58 F.R.D. at 48. To the extent that Judge Newman's recent decision in Cooper v. Meskill, 376 F.Supp. 731 (D.Conn.1974) is to the contrary, we decline to follow it as we find that it does not give proper recognition to the views expressed by the Court in Steffel, supra. As the Fifth Circuit well stated in Jones v. Wade, 479 F.2d 1176, 1180 (5 Cir. 1973):
In a case otherwise within the jurisdiction of a three-judge court, the question whether the Younger doctrine requires abstention is generally a matter for the exercise of equitable discretion, and thus ordinarily a determination to be made by a three-judge court rather than by a single judge. (Citations omitted). A single district judge may dismiss only where it is plain that Younger leaves no room for a three-judge court to exercise equitable discretion.