Dave BAUM, Plaintiff,

v.

Franklin J. LUNDING, Jr., Chairman, Illinois State Board of Elections, et al., Defendants.

Jayne W. BARNARD et al., Plaintiffs,

v.

Franklin J. LUNDING, Jr., et al., Defendants.

Nos. 76 C 261, 76 C 290.

United States District Court, N. D. Illinois, E. D.

Feb. 3, 1976.

Dave Baum, pro se.

Michael Kreloff, Jayne W. Barnard, William H. Luking, Chicago, Ill., for plaintiffs.

Michael E. Lavelle, Lavelle, Levinson & Wanninger, Michael Levinson, Bernard Carey, States Atty., by Richard K. Means, Asst. States Atty., Ian H. Levin, Foran, Wiss & Schultz, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

FLAUM, District Judge:

These cases involve civil rights (42 U.S.C. § 1983) challenges to the order in which candidates are listed on ballots for the Illinois primary election now scheduled for March 17, 1976. They are consolidated for the purpose of resolving the pending motions. Plaintiffs in 76 C 290 seek to be delegates and alternate delegates to the Democratic National Convention; plaintiff in 76 C 261 is running for the office of Circuit Court Judge of Cook County. An important feature of both of the positions sought is that each allows for the victory of more than one candidate.

The final step of the process by which the order of the primary ballot is determined is, for these plaintiffs, Regulation 1975–2, which has been formulated and utilized by the State Board of Elections of the State of Illinois ("Board"). Plaintiffs request that this regulation be declared unconstitutional, that its enforcement be enjoined, and that further injunctive relief be granted which will in effect undo the prior enforcement of the regulation. Because of the statewide operation of the regulation, the convention of a three-judge court under 28 U.S.C. §§ 2281 et seq. has been requested for both suits. Defendants, the members of the Board, have opposed these motions, and have also moved that the complaints be dismissed. For the reasons which follow, the court has determined that no substantial constitutional question has been presented by the complaints. Consequently, the plaintiffs' motions will be denied and the defendants' motion to dismiss granted.

## BACKGROUND

A very brief background of Illinois election procedure is necessary to understand the complaints. Persons who wish to be candidates for their party must enter the party primary. To be listed on the primary ballot, they must file with the Board petitions signed by a number of voters. Under 46 Ill.Rev.Stats. § 7–10, these petitions may have the name of more than one candidate for the same office. The Board is required under § 7–14 to certify the names of proper candidates, and the order in which they shall be listed on the ballot. Section 7–14 further requires that the order certified by the Board shall be the order in which the *petitions* are filed. This scheme leads to two sources of ambiguity, which are not entirely unrelated. First, it is not clear from § 7–14 how to order the persons whose names appear together as candidates on the same petition. Second, no guidance is given for the reasonable circumstances in which petitions may be deemed to have been simultaneously filed, as when they arrive mixed in the same mail shipment. Although both of these ambiguities have been the subject of judicial attention, the present complaints present problems not previously anticipated.

In 1969, the petitions which arrived in a special Sunday mail delivery were deemed simultaneously filed, and vying for first place on the primary ballot. Then Secretary of State of the State of Illinois, Paul Powell, admitted that he chose which petitions would prevail on the basis of his personal friendship, and his personal opinion as to how well suited the candidates were for the offices they sought. This circuit found that practise to constitute a purposeful, invidious discrimination under *Snowden v. Hughes*, 321 U.S. 1, 64 S.Ct. 397, 88 L.Ed. 497 (1944), and this violative of the equal protection clause of the Fourteenth Amendment to the Constitution. *Weisberg v.*

*Powell,* 417 F.2d 388 (7th Cir. 1969). Subsequent federal cases addressed the same situation with the same result and enjoined various state officials from "breaking ties in the order of listing nominating petitions on primary ballots . . . by any means other than a drawing of candidates' names by lot or other nondiscriminatory means by which each of such candidates shall have an equal opportunity to be placed first on the ballot." *Mann v. Powell,* 314 F.Supp. 677, 679 (N.D.Ill.1969) (Three-Judge Court), *aff'd,* 398 U.S. 955, 90 S.Ct. 2169, 26 L.Ed.2d 539 (1970). *Accord, Mann v. Powell,* 333 F.Supp. 1261 (N.D.Ill.1970) (Three-Judge Court).

Under Regulation 1973–2, promulgated by the Secretary of State, petitions which were brought in person at 8:00 A.M. on the morning of the first day of filing were deemed to have been filed simultaneously with those petitions in the unopened mail present at 8:00 A.M. in the Board office.

This aspect of that regulation was found to be within the mandate of non-discrimination in the federal injunctive language. *Huff v. State Board of Elections,* 57 Ill.2d 74, 309 N.E.2d 585 (1974). The plaintiffs in *Huff* alleged that those personally present could not constitutionally be considered as having filed simultaneously. However, neither in *Huff,* nor in any of the cases cited herein, nor in either of the present cases, has a challenge been made to the very practise of deeming petitions simultaneously filed.

## THE CHALLENGED REGULATION

Regulation 1975–2 was adopted by the State Board of Elections on November 21, 1975, and filed with the Office of the Secretary of State on December 3, 1975. It provides,[1] insofar as is relevant to these complaints, that a lottery be held between those candidates who are deemed to have filed their petitions simultaneously. How-

1. The lottery system to be used to break ties resulting from the simultaneous filing with the State Board of Elections of petitions for the same office shall be as follows:

1. The names of all candidates who filed simultaneously for the same office shall be listed alphabetically and shall be numbered consecutively commencing with the number one which shall be assigned to the candidate whose name is listed first on the alphabetical list; provided, however, that candidates filing a group petition for the same office shall be treated as one in the alphabetical listing using the name of the first candidate for such office to appear on the petitions as the name to be included in the alphabetical list. For example, if five candidates by the names of Downs, Brown, Edwards, Cook and Adams have file simultaneously, they will be arranged alphabetically and assigned numbers as follows: Adams, one; Brown, two; Cook, three; Downs, Four; and Edwards, five. However, if Cook and Adams filed a group petition and Cook's name appeared first on the petition, then the candidates would be arranged as follows: Brown, one; Cook and Adams, two; Downs, three; and Edwards, four.

2. All ties will be broken by a *single* drawing. A number shall be placed in a container representing each number assigned to each candidate and group of candidates pursuant to the alphabetical listing procedure set forth in paragraph 1 above. For example, if the largest number to be used for any office is five, then numbers one, two, three, four and five will be placed in a container. In this manner, suffi-

cient numbers will be placed in the container to conduct a drawing for all offices at the same time.

3. After the numbers are placed in the container they shall be drawn one at a time from the container after they have been thoroughly shaken and mixed. The candidate or group of candidates in the position on an alphabetical list corresponding to the first number drawn shall be certified ahead of the other candidates listed on the alphabetical list. The candidate or group of candidates in the position on the alphabetical list corresponding to the second number drawn will be certified second and so forth until all numbers have been drawn. For example, where no group petitions were filed, if candidates Adams, Brown, Cook, Downs and Edwards filed simultaneously at 8:00 a. m. on the first day of filing, and the number three is the first drawn, then candidate Cook, who is listed in the third position on the alphabetical list, shall be certified first on the ballot. If the number one is drawn second, then candidate Adams, who is listed in the first position on the alphabetical list, shall be certified second on the ballot . . . and so on. For offices where group petitions were filed, using the example set forth above where candidates Cook and Adams file a group petition for the same office, and Cook's name appears first on the petition, and number three is drawn first, then candidate Downs would be listed first. If the number two is drawn second, then candidates Cook and Adams would be certified second and third, respectively. If the number

ever, it also provides that where more than one candidate is listed on a single petition, that *petition* shall be treated in the lottery as though it were one candidate, and wherever that "candidate" would have been listed on the ballot, the list of candidates on the petition shall be inserted. In other words, if a petition with three candidates, listed as Smith, Jones and Carlson, is deemed simultaneously filed with petitions for individual candidates Weber and Stephens, only three lots are made up. If the group petition is drawn second, and Weber first, the order of listing becomes Weber, Smith, Jones, Carlson and Stephens. Wherever the group petition is placed, all its candidates would appear in an unbroken sequence on the ballot in the exact order in which they are listed on the petition.

Group petitions were deemed filed simultaneously with the individual petitions filed by plaintiffs. Both complaints charge that an unconstitutionally unfair advantage accrues to the candidate listed first in each group petition. 76 C 261 also charges that the regulation was promulgated with insufficient notice. This matter will be taken up later in this opinion. No. 76 C 290 charges that the regulation creates an additional unconstitutional advantage for all the members of a group petition in that they have an identifiable block on the ballot, wherever the entire group is chosen to appear on the ballot, *among those whose petitions are deemed to have been simultaneously filed.*

■ The alleged disparities in treatment must be considered by a three-judge court if they raise a substantial constitutional question, *Goosby v. Osser,* 409 U.S. 512, 519, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973); *Idlewild Liquor Corp. v. Epstein,* 370 U.S. 713, 715, 82 S.Ct. 1294, 8 L.Ed.2d 794 (1962); *Sheehan v. Scott,* 520 F.2d 825 (7th Cir.1975), unless the constitutional attack on a statute or regulation is so well founded that a contrary claim is wholly frivolous. *Bailey v. Patterson,* 369 U.S. 31, 33, 82 S.Ct. 549, 7 L.Ed.2d 512 (1962). A review of the actual claims made is consequently appropriate. *Compare Sheehan v. Scott, supra, with Holiday Magic, Inc. v. Warren,* 497 F.2d 687 (7th Cir.1974). The court must thus make a limited though meaningful inquiry into the merits of the constitutional claims presented. The unique factual situation presented by these complaints obviates the need for any constitutional inquiry of greater detail.

■ In the prior federal cases involving the Illinois primary ballot, the courts had to examine the application of laws presumed constitutional, and thus they determined the existence of invidious intent. In the present case, however, it is Regulation 1975–2 which is being challenged. The question for the court to determine is whether the regulation creates similarly situated classes which are treated unequally. If so, the court may have to make the further determination that the discrimination serves a rationally related legitimate state interest. *Reed v. Reed,* 404 U.S. 71, 75–76, 92 S.Ct. 251, 30 L.Ed.2d 225 (1971). Since a fundamental right to vote is arguably inextricably linked with the advantages received by candidates through their position on the primary ballot, see *Kusper*

four is drawn third, then candidate Edwards would be certified fourth . . . and so on. In districts with fewer names on the alphabetical list than are in the drawing, then all numbers in excess of the number of candidates or group of candidates that appear on the particular alphabetical list shall be disregarded. Thus, if five numbers are placed in the container, and only four candidates or groups of candidates are on a particular list, then the number five shall be disregarded. In districts with fewer than four names, the numbers four and five shall be disregarded. In districts with fewer than three names, the numbers three, four and five shall be disregarded. Four example, if candidates Adams and Cook filing separate pe-

titions, are the only candidates listed on the alphabetical list and five numbers are chosen in the following order, 3, 5, 4, 2, and 1, then candidate Cook's name will appear in the certification prior to the name of candidate Adams. 4. All candidates shall be certified in the order in which petitions have been filed with the State Board of Elections. In cases where candidates have filed simultaneously, they shall be certified (in the order determined by the lottery procedure outlined above) prior to candidates who filed for the same office who filed their petitions at a later time, except in those situations where the law requires rotation on a district-by-district basis.

*v. Pontikes,* 414 U.S. 51, 58, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973), a compelling state interest may be necessary to justify the discrimination. See *Storer v. Brown,* 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974). The court concludes, however, that no cognizable discrimination is in fact occurring through the use of the regulation. Consequently, it is unnecessary to determine the presence of either kind of justifying state interest, and no substantial constitutional question has been presented.

Under § 7–14, Illinois has selected a filing procedure *which enables persons who wish to be listed together* to simply line up at the same time, or in effect, give their voter petitions to one person who would drop them all off at once, in any order, whatever his rank in filing them happens to be. The fact that all names are on one petition, or that an order is specified on that one petition does not enhance this contingency, for the lone person dropping off the petitions could physically hand them to a clerk one at a time, in the order the candidates prescribed to him. Consequently, the fact that a lottery preserves this order cannot be said to be the cause of any discrimination. As a non-discriminatory manner of breaking ties for the time of filing, the lottery merely restates a physical reality which has not been challenged as constitutionally violative.

The remaining equal protection claim to be examined is whether the regulation favors the persons listed at the top of the group, statistically, over individual candidates. For this purpose, the court assumes, even in the absence of clear allegation in either complaint, that there may be some advantage to candidates with higher position on the ballot. Again, whatever advantage may be said to flow to the person at the head of the group reflects the physical realities that accrue from having the order of listing on the ballot reflect the chronological order in which the voting petitions are filed. When one candidate in a group allows the other to step in front of him in line, or purposely walks onto the line with the other in front of him, he gives that first person an advantage at the ballot listing. No increment to that advantage is secured through Regulation 1975–2. Moreover, the proper comparison to make for the individual candidates is as against all serious candidates.[2] These are the persons who, under the Fourteenth Amendment are similarly situated to the plaintiffs. As to these there is no statistical advantage garnered by the lottery. Each group contains within it persons who have greater and lesser changes of being near the top of the ballot. As against the entire group however, no individual is disadvantaged statistically. If anything, individuals are pushed to the extremes of the ballot, that is, either to the top or the bottom, on the average, a situation which has elsewhere been characterized as advantageous. See *Weisberg v. Powell, supra.*

## NOTICE OF REGULATION

■ The final matter to be considered is the issue raised by 76 C 261, that failure to give advanced notice of the adoption of the new regulation, 1975–2, gave rise to a constitutional deprivation of procedural due process. The Board is also alleged to have failed to answer the letter from plaintiff Dave Baum, in which he questioned the fairness of the regulation adopted. The thrust of this part of this complaint appears to be that plaintiff should have been notified in advance of the time that he filed his petition with the Board.

Claims of this nature may be substantial under many circumstances. In *Briscoe v. Kusper,* 435 F.2d 1046 (7th Cir.1970), persons were found to have been unconstitutionally barred from Chicago aldermanic ballots when hypertechnical regulations used for disqualifying signatures on voting petitions had not been promulgated in advance. The effect of the lack of notice was to leave a prospective alderman with the

---

**2.** A different approach might be warranted if the lower listed persons in the group were sham candidates, present on the petition just for the purpose of guaranteeing a higher position for the top listed person. Cf. *Smith v. Cherry,* 489 F.2d 1098 (7th Cir.1973), *cert. denied,* 417 U.S. 910, 94 S.Ct. 2607, 41 L.Ed.2d 214 (1974).

erroneous belief that signatures, acceptable for previous aldermanic petitions, were currently acceptable. Prior notice would have allowed those candidates to get proper signatures. Plaintiff Baum can make no analogous claim, however. Unlike the *Briscoe* plaintiffs who were discriminated against, plaintiff Baum suffered no loss; he still maintained an equal chance with the rest of the candidates for various spots on the primary ballot. Moreover, he chose to run as a lone independent. He makes no allegation that, had he known of the regulation in advance, he would have affiliated himself with a block of others. For these reasons, the allegations of 76 C 261 preclude any of the relief requested by the plaintiff regardless of the substantiality of the constitutional claim. Additionally, the claim can have no merit, as there is no loss, prospective or retrospective, which the allegations associate with it.

## CONCLUSION

For the foregoing reasons, the court finds that 76 C 290 and 76 C 261 do not present substantial constitutional claims. Therefore, the motions to convene a three-judge court are denied. Finally, since neither of these complaints makes allegations, which if true, would form the basis for relief, the motions to dismiss are granted, as to each complaint.