GOOSBY ET AL. *v.* OSSER ET AL.

No. 71–6316.  Argued December 6–7, 1972—
Decided January 17, 1973

BRENNAN, J., delivered the opinion for a unanimous Court.

*Ann S. Torregrossa* argued the cause for petitioners *pro hac vice.*  With her on the briefs was *Elliot B. Platt.*

*Peter W. Brown,* Deputy Attorney General, argued the cause for respondents Commonwealth of Pennsylvania

et al. With him on the brief were *J. Shane Creamer,* Attorney General, and *Thomas J. Oravetz* and *Edward J. Weintraub,* Deputy Attorneys General. *John Mattioni* argued the cause and filed a brief for municipal respondents.

Briefs of *amici curiae* urging reversal were filed by *Jack Greenberg* and *Stanley A. Bass* for the NAACP Legal Defense and Educational Fund, Inc., et al., and by *Samuel Rabinove, Michael von Moschzisker, Wilbur Bourne Ruthrauff, A. Harry Levitan,* and *Carolyn Temin* for the American Jewish Committee et al.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

The question is whether 28 U. S. C. § 2281 [1] required the convening of a three-judge court in the District Court for the Eastern District of Pennsylvania to hear this case. It is a class action brought by and on behalf of persons awaiting trial and confined in Philadelphia County prisons because either unable to afford bail or because charged with nonbailable offenses. The complaint alleges that provisions of the Pennsylvania Election Code, in violation of the Equal Protection and Due Process Clauses of the Fourteenth Amendment, absolutely deny petitioners' class the right to vote in

---

[1] Title 28 U. S. C. § 2281 provides:

"An interlocutory or permanent injunction restraining the enforcement, operation or execution of any State statute by restraining the action of any officer of such State in the enforcement or execution of such statute or of an order made by an administrative board or commission acting under State statutes, shall not be granted by any district court or judge thereof upon the ground of the unconstitutionality of such statute unless the application therefor is heard and determined by a district court of three judges under section 2284 of this title."

that they neither permit members of the class to leave prison to register and vote, nor provide facilities for the purpose at the prisons, and in that they expressly prohibit persons "confined in penal institutions" from voting by absentee ballot.[2] The complaint names as defendants two Commonwealth officials, the Attorney General and Secretary of State of Pennsylvania, and certain municipal officials of the County and City of Philadelphia: the City Commissioners of Philadelphia who constitute the Board of Elections and Registration Commission of the City and County of Philadelphia, the Voting Registration Supervisor for the City and County, and the Superintendent of Prisons for the County.

On oral argument before a single judge on petitioners' motion for a temporary restraining order, the Commonwealth officials appeared by a Deputy Attorney General, who conceded that the challenged provisions of the Election Code, as applied to petitioners' class, were unconstitutional under the Fourteenth Amendment. The municipal officials, on the other hand, vigorously defended the constitutionality of the provisions as so applied. The single judge deemed the contrary view of the municipal officials to be irrelevant, as he regarded the Commonwealth officials to be the "principal defendants." See

---

[2] Pa. Stat. Ann., Tit. 25, § 623–1 et seq. (1963 and Supp. 1972–1973); § 2602 (w)(12) (Supp. 1972–1973). Several elections, including the 1972 presidential election, have been held since this action was filed, but this does not render the case moot. See Moore v. Ogilvie, 394 U. S. 814 (1969). Similarly, the case is not rendered moot because some of the named petitioners have lost their status as class members by being released on bail, discharged, acquitted, or convicted. See McDonald v. Board of Election Comm'rs, 394 U. S. 802, 803 n. 1 (1969); Lee v. Washington, 390 U. S. 333 (1968), aff'g 263 F. Supp. 327 (MD Ala. 1966).

n. 3, *infra.* He therefore ruled that the concession on behalf of the Commonwealth officials meant there was no case or controversy before the court as required by Art. III of the Constitution, and dismissed the complaint.[3] On petitioners' appeal, the Court of Appeals for the Third Circuit affirmed. 452 F. 2d 39 (1971). We do not, however, read the *per curiam* opinion of the Court of Appeals as resting the affirmance on agreement with the single judge that the concession of the Commonwealth officials meant there was no case or controversy before the court. Rather, we read the *per curiam* opinion as either implying disagreement with the single judge on that question, or as at least assuming that a case or controversy existed, for the opinion states that, in the view of the Court of Appeals, petitioners' constitutional claims were wholly insubstantial under *McDonald* v. *Board of Election Comm'rs,* 394 U. S. 802 (1969), in which circumstance,

---

[3] The unpublished transcript of the oral opinion of the single judge reads in pertinent part as follows:

"It has been stated that no Federal Court has jurisdiction to pronounce any statute, either of the State or of the United States void because irreconcilable with the Constitution except as it is called upon to adjudge the legal rights of litigants in actual controversies.

"Now, in the instant case the Attorney General, as the chief legal officer of the Commonwealth, obviously represents, as Counsel have stated in their arguments this morning, the 'principal' Defendant or Defendants. The position taken by the remaining Defendants seems to be the result of the fact that the Attorney General has not, in accordance with his past practice, rendered an opinion together with suggested procedures, plans, etc., covering the subject matter of the opinion.

"It is, therefore, our conclusion that in the posture of this case as it presently exists . . . there is no controversy in the sense in which that term is used by the Courts, and we find ourselves compelled to, therefore, dismiss the complaint. It is so ordered." App. 85.

the Court of Appeals held, *Bailey* v. *Patterson,* 369 U. S. 31 (1962), was authority that 28 U. S. C. § 2281 did not require the assembly of a three-judge court and that dismissal by the single judge was therefore proper, 452 F. 2d, at 40. A petition for rehearing *en banc* was denied, three judges dissenting. We granted certiorari, 408 U. S. 922 (1972). We reverse the judgment of the Court of Appeals and remand with direction to enter an appropriate order pursuant to 28 U. S. C. § 2281 for the convening of a three-judge court to hear this case.

I

The single judge clearly erred in holding that the concession of the Commonwealth officials foreclosed the existence of a case or controversy. All parties are in accord that Pennsylvania law did not oblige the municipal officials to defer to the concession of the Commonwealth officials, or otherwise give the Commonwealth officials a special status as "principal defendants." [4] Indeed, the brief filed in this Court by the Commonwealth officials forthrightly argues that "[t]he District Court made an egregious error. The Attorney General and the Secretary of the Commonwealth are not the only defendants in this case. The City Commissioners of Philadelphia, the Voting Registration Supervisor, the Registration Commission, and the Superintendent of Prisons for Philadelphia County are also parties. These parties have contested vigorously the issues raised by petitioners both in the District Court and on appeal.

---

[4] Thus, this is not a situation in which a State confesses error and represents that the error will be corrected without need for further court action. See, *e. g., Titmus* v. *Tinsley,* 370 U. S. 964 (1962); *McKissick* v. *Durham City Board of Education,* 176 F. Supp. 3 (MDNC 1959); *Jeffers* v. *Whitley,* 197 F. Supp. 84 (MDNC 1961); *Kelley* v. *Board of Education,* 139 F. Supp. 578 (MD Tenn. 1956).

They have provided adversity of interest, and will sharply define the issues, to the extent they are not already clear." Brief for Respondents Commonwealth of Pennsylvania et al. 4–5.[5]

Thus, there is satisfied the requisite of Art. III that "[t]he constitutional question . . . be presented in the context of a specific live grievance." *Golden* v. *Zwickler,* 394 U. S. 103, 110 (1969). As between petitioners and the municipal officials, the District Court was "called upon to adjudge the legal rights of litigants in actual controversies," *Liverpool, N. Y. & P. S. S. Co.* v. *Commissioners of Emigration,* 113 U. S. 33, 39 (1885), and "the interests of [petitioners' class] require the use of . . . judicial authority for [petitioners'] protection against actual interference." *United Public Workers of America* v. *Mitchell,* 330 U. S. 75, 90 (1947). Since the municipal officials persist in their asserted right to enforce the challenged provisions of the Election Code, there is a "real and substantial controversy" "touching the legal relations of parties having adverse legal interests," *Aetna Life Ins. Co.* v. *Haworth,* 300 U. S. 227, 240–241 (1937), in which circumstance the concession of the Commonwealth officials could not have the effect of dissipating the existence of a case or controversy. Cf. *In re Metropolitan Railway Receivership,* 208 U. S. 90, 107–108 (1908).

---

[5] We also read respondents' brief as rejecting the view of the single judge that the municipal officials must defer to the commonwealth officials' concession pending the issuance of a formal opinion of the Attorney General on the question of the constitutionality of the statutes.

Insofar as the single judge may have rested his finding of the absence of a case or controversy on the alleged difficulty of formulating a remedy, he also erred. See *Louisiana* v. *United States,* 380 U. S. 145, 154 (1965); *Brown* v. *Board of Education,* 349 U. S. 294, 300 (1955).

## II

The Court of Appeals also erred. We disagree with its holding that *McDonald* v. *Board of Election Comm'rs, supra,* rendered petitioners' constitutional claims wholly insubstantial.

Title 28 U. S. C. § 2281 does not require the convening of a three-judge court when the constitutional attack upon the state statutes is insubstantial. "Constitutional insubstantiality" for this purpose has been equated with such concepts as "essentially fictitious," *Bailey* v. *Patterson,* 369 U. S., at 33; "wholly insubstantial," *ibid.;* "obviously frivolous," *Hannis Distilling Co.* v. *Baltimore,* 216 U. S. 285, 288 (1910); and "obviously without merit," *Ex parte Poresky,* 290 U. S. 30, 32 (1933). The limiting words "wholly" and "obviously" have cogent legal significance. In the context of the effect of prior decisions upon the substantiality of constitutional claims, those words import that claims are constitutionally insubstantial only if the prior decisions inescapably render the claims frivolous; previous decisions that merely render claims of doubtful or questionable merit do not render them insubstantial for the purposes of 28 U. S. C. § 2281. A claim is insubstantial only if " 'its unsoundness so clearly results from the previous decisions of this court as to foreclose the subject and leave no room for the inference that the questions sought to be raised can be the subject of controversy.' " *Ex parte Poresky, supra,* at 32, quoting from *Hannis Distilling Co.* v. *Baltimore, supra,* at 288; see also *Levering & Garrigues Co.* v. *Morrin,* 289 U. S. 103, 105–106 (1933); *McGilvra* v. *Ross,* 215 U. S. 70, 80 (1909). Under this test, it is clear that *McDonald* is not a prior decision of this Court that "foreclose[s] the subject" of petitioners' constitutional attack upon the Pennsylvania statutory scheme; it is demonstrably not a decision that

"leave[s] no room for the inference that the question sought to be raised [by petitioners] can be the subject of controversy."

In *McDonald*, appellants were a class of pretrial detainees in Cook County, Illinois, already registered to vote, who sought to vote only by absentee ballot. Their timely applications to the Cook County Board of Election Commissioners for absentee ballots were denied on the ground that pretrial detainees were not included among those persons specifically permitted by the Illinois Election Code to vote by absentee ballot. Appellants brought suit alleging that in that circumstance the Illinois Election Code denied them equal protection of the laws, particularly as the Code provided absentee ballots for those "medically incapacitated," and for pretrial detainees who were residents of Cook County but incarcerated outside of Cook County.[6]

The threshold question presented in *McDonald* was "how stringent a standard to use in evaluating the classifications made [by the Illinois absentee ballot provisions] and whether the distinctions must be justified by a compelling state interest . . . ." 394 U. S., at 806. In resolving this question, the Court analyzed the Illinois scheme in light of our decisions that required the application of the more stringent compelling state interest test when either a fundamental right, such as the right to vote, was allegedly infringed, *Reynolds* v. *Sims*, 377 U. S. 533 (1964); *Harper* v. *Virginia Board of Elec-*

---

[6] The Illinois absentee voting statute, Ill. Rev. Stat., c. 46, §§ 19–1 to 19–3 (1971), made absentee voting available to four classes of persons: (1) those who were absent from their county of residence for any reason; (2) those who were "physically incapacitated"; (3) those whose observance of a religious holiday prevented attendance at the polls; and (4) those who served as poll watchers in precincts other than their own on election day. See *McDonald* v. *Board of Election Comm'rs, supra,* at 803–804.

*tions,* 383 U. S. 663 (1966); *Carrington* v. *Rash,* 380 U. S. 89 (1965), or when the statutory classifications were drawn on the basis of suspect criteria, such as wealth or race, *Harper* v. *Virginia Board of Elections, supra; McLaughlin* v. *Florida,* 379 U. S. 184, 192 (1964); *Douglas* v. *California,* 372 U. S. 353 (1963). 394 U. S., at 807. Our analysis led us to conclude that neither situation was presented by the Illinois absentee voting provisions. We held that "the distinctions made by Illinois' absentee provisions are not drawn on the basis of wealth or race," *ibid.,* and, with respect to the alleged infringement of appellants' right to vote, that:

> "[T]here is nothing in the record to indicate that the Illinois statutory scheme has an impact on appellants' ability to exercise the fundamental right to vote. It is thus not the right to vote that is at stake here but a claimed right to receive absentee ballots. Despite appellants' claim to the contrary, the absentee statutes, which are designed to make voting more available to some groups who cannot easily get to the polls, do not themselves deny appellants the exercise of the franchise; nor, indeed, does Illinois' Election Code so operate as a whole, for the State's statutes specifically disenfranchise only those who have been convicted and sentenced, and not those similarly situated to appellants. [Citation omitted.] *Faced as we are with a constitutional question, we cannot lightly assume, with nothing in the record to support such an assumption, that Illinois has in fact precluded appellants from voting." Id.,* at 807–808. (Emphasis supplied.)

For all that appeared, Illinois might make the franchise available by other means:

> "Appellants agree that the record is barren of any indication that the State might not, for instance,

possibly furnish the jails with special polling booths or facilities on election day, or provide guarded transportation to the polls themselves for certain inmates, or entertain motions for temporary reductions in bail to allow some inmates to get to the polls on their own." *Id.,* at 808 n. 6.

Thus, "[s]ince there is nothing in the record to show that appellants are in fact absolutely prohibited from voting by the State . . ." *id.,* at 808 n. 7, we concluded that the Illinois absentee ballot provisions were to be tested by the "more traditional standards for evaluating . . . equal protection claims," *id.,* at 808, and that under those standards the provisions could not be said to be arbitrary or unreasonable, particularly since "there is nothing to show that a judicially incapacitated, pretrial detainee is absolutely prohibited from exercising the franchise." *Id.,* at 809.

Petitioners' constitutional challenges to the Pennsylvania scheme are in sharp contrast. Petitioners allege [7] that, unlike the appellants in *McDonald,* the Pennsylvania statutory scheme absolutely prohibits them from voting, both because a specific provision affirmatively excludes "persons confined in a penal institution" from voting by absentee ballot, Pa. Stat. Ann., Tit. 25, § 2602 (w)

---

[7] "The existence of a substantial question of constitutionality must be determined by the allegations of the bill of complaint." *Ex parte Poresky,* 290 U. S. 30, 32 (1933). In the present procedural posture of petitioners' case, the allegations of their complaint must be deemed to be true. *Boddie* v. *Connecticut,* 401 U. S. 371, 373 (1971); *Gomillion* v. *Lightfoot,* 364 U. S. 339, 341 (1960). In addition to the allegations that they are absolutely prohibited from voting, petitioners allege that the Pennsylvania statute creates classifications based on wealth and race, that the denial of the right to vote is an impermissible consequence of pretrial detention in violation of due process of law, and that the Pennsylvania statute's specific exclusion of pretrial detainees from the definition of a "qualified absentee voter" is unconstitutional even under the less stringent rational relationship test applied in *McDonald.*

(12) (Supp. 1972–1973), and because requests by members of petitioners' class to register and to vote either by absentee ballot, or by personal or proxy appearance at polling places outside the prison, or at polling booths and registration facilities set up at the prisons, or generally by any means satisfactory to the election officials, had been denied. Thus, petitioners' complaint alleges a situation that *McDonald* itself suggested might make a different case.

This is not to say, of course, that petitioners are as a matter of law entitled to the relief sought. We neither decide nor intimate any view upon the merits.[8] It suffices that we hold that *McDonald* does not "foreclose the subject" of petitioners' challenge to the Pennsylvania statutory scheme. The significant differences between that scheme and the Illinois scheme leave ample "room for the inference that the questions sought to be raised [by petitioners] can be the subject of controversy." See *supra,* at 518, 519.

We therefore conclude that this case must be "heard and determined by a district court of three judges . . . ." 28 U. S. C. § 2281. The judgment of the Court of Appeals is therefore reversed and the case is remanded with direction to enter an appropriate order pursuant to that section for the convening of a three-judge court to hear and determine the merits of petitioners' constitutional claims, see *Kennedy* v. *Mendoza-Martinez,* 372 U. S. 144, 153 (1963); *Idlewild Bon Voyage Liquor Corp.* v.

---

[8] The *per curiam* opinion of the Court of Appeals states: "We have carefully considered each of the contentions raised by the [petitioners] and find them to be without merit." 452 F. 2d 39, 41. In view of the result we reach, the Court of Appeals was without jurisdiction to render this holding insofar as it implies an adjudication of the merits of petitioners' constitutional contentions. *Stratton* v. *St. Louis Southwestern R. Co.,* 282 U. S. 10 (1930). C. Wright, The Law of Federal Courts 193 (2d ed. 1970).

*Epstein,* 370 U. S. 713 (1962); *Borden Co.* v. *Liddy,* 309 F. 2d 871, 876 (CA8 1962), cert. denied, 372 U. S. 953 (1963); *Riss & Co.* v. *Hoch,* 99 F. 2d 553, 555 (CA10 1938); see also C. Wright, The Law of Federal Courts 190–191 (2d ed. 1970), or, if deemed appropriate, to abstain from such determination pending state court proceedings.   See *Lake Carriers' Assn.* v. *MacMullan,* 406 U. S. 498, 509–513 (1972).

*It is so ordered.*