577 F.2d 677
 LA RAZA UNIDA, a political party, Antonio Devargas, Barbara
Manzanares and Moise Morales, Plaintiffs-Appellants,
v.
STATE OF NEW MEXICO, Ernestine Evans, New Mexico Secretary
of State and Joe Branch, Rio Arriba County Clerk,
Defendants-Appellees.
 No. 76-2057.
 United States Court of Appeals,
Tenth Circuit.
 Argued March 16, 1978.
Decided June 6, 1978.
 
 Morris J. Baller, San Francisco, Cal. (and Vilma S. Martinez and Joaquin G. Avila, Mexican American Legal Defense and Educational Fund, San Francisco, Cal., and Richard Rosenstock, Chama, N.M., on the brief), for plaintiffs-appellants.
 Jill Z. Cooper, Asst. Atty. Gen., Santa Fe, N.M. (Toney Anaya, Atty. Gen., Santa Fe, N.M., on the brief), for defendants-appellees.
 Before McWILLIAMS, BARRETT and LOGAN, Circuit Judges.
 McWILLIAMS, Circuit Judge.
 
 
 1
 La Raza Unida, a minor political party in the State of New Mexico, and three individual party members brought suit against the State of New Mexico, its Secretary of State, and the County Clerk for Rio Arriba County, seeking to enjoin the enforcement of certain New Mexico statutes relating to the appointment of local election officials to serve on precinct election boards.
 
 
 2
 The claim was that the plaintiffs' rights under the First and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. § 1983 were being violated because, under applicable New Mexico law, precinct board membership was limited to those belonging to a majority party, i. e., a party whose candidate received at least 15% of the statewide vote at the last gubernatorial or presidential election. Inasmuch as La Raza did not qualify as a "major party," the composition of the various precinct election boards was limited to Democrats and Republicans, to the total exclusion of La Raza Unida party members.
 
 
 3
 La Raza asked for a preliminary injunction and requested that a three-judge court be convened under 28 U.S.C. § 2281 to hear the matter. The several defendants responded to the motion for preliminary injunction and answered the complaint. The district court denied the request to convene a three-judge court on the ground that La Raza's claims were "wholly insubstantial" since such claims were foreclosed by the decision in Pirincin v. Board of Elections of Cuyahoga County, 368 F.Supp. 64 (N.D. Ohio), aff'd mem., 414 U.S. 990, 94 S.Ct. 345, 38 L.Ed.2d 231 (1973). Thereafter, the district court, dismissed the action for lack of a substantial federal question. La Raza now appeals.
 
 
 4
 The Supreme Court has held that a three-judge court is not required under 28 U.S.C. § 2281 if the constitutional claim is insubstantial. Goosby v. Osser, 409 U.S. 512, 518, 93 S.Ct. 854, 859, 35 L.Ed.2d 36 (1973). Goosby further holds that a claim is constitutionally insubstantial if it is squarely foreclosed by "prior decisions (which) inescapably render the claims frivolous." The trial court was of the view that the claim of La Raza in the instant case was, for all practical purposes, the same as the claim asserted, and rejected, in Pirincin, which judgment had thereafter been affirmed, without written opinion, by the Supreme Court.
 
 
 5
 The fact that the Supreme Court in Pirincin affirmed without written opinion, as opposed to affirming in a written opinion, is of no particular significance insofar as our present problem is concerned. The action of the Supreme Court in affirming without an opinion the judgment of the three-judge court constitutes a "prior decision" as that phrase is used in Goosby. In support thereof, see Vazza v. Campbell, 520 F.2d 848 (1st Cir. 1975). In Vazza, the district court had refused to convene a three-judge court on the basis of a three-judge decision by the district court for the Northern District of Texas, which judgment was later affirmed without written opinion by the Supreme Court. In Vazza, the First Circuit affirmed the judgment of the trial court refusing to convene a three-judge court with this comment:
 
 
 6
 Not only is the opinion (of the three-judge court in the Northern District of Texas) persuasive in its own right, but the Supreme Court's subsequent summary affirmance renders wholly insubstantial appellant's claim that the Constitution requires that we resolve this case differently.
 
 
 7
 On oral argument, counsel for La Raza agreed that if the rule of Pirincin has present application, then La Raza cannot prevail in its appeal. Thus, the issue is whether the claim in the present case is the same as the claim in Pirincin. If it is, then by virtue of the decision in Pirincin, which was affirmed by the Supreme Court, the present claim, under Goosby is insubstantial, and a three-judge court did not have to be convened. La Raza argues that its claim does not come within the rule of Pirincin. The trial court, however, in rejecting La Raza's request for a three-judge court, was of the view that the present claim was identical to the claim in Pirincin, and that the election laws under attack in Pirincin were similar to the election laws under attack here. We agree with the trial court's analysis of the matter.
 
 
 8
 Pirincin involved an attack on Ohio election laws, and particularly the manner in which county boards of elections were constituted. Under Ohio law, county boards of elections were appointed from the two parties receiving the highest number of votes in the preceding gubernatorial election, which meant that all members of the county boards of elections were either Democrats or Republicans. One plaintiff in Pirincin was a member of the Socialist Labor Party, a minor party whose members were foreclosed under Ohio law from appointment to a county board of election. Another plaintiff in Pirincin was a black person and a third plaintiff was a female. All claimed their rights under the First and Fourteenth Amendments were being violated by the Ohio laws which, in effect, restricted appointment to county boards of election to Democrats and Republicans.
 
 
 9
 As indicated, in Pirincin, a three-judge court held that the Ohio law relating to county boards of elections was not constitutionally infirm, and its judgment was affirmed by the Supreme Court. Without going into further comparison of Pirincin with the instant case, we believe that the instant case is squarely with the rule of Pirincin. A fair reading of Pirincin convinces us that Pirincin and the instant case are for all practical purposes indistinguishable. Under Goosby, then, La Raza'a claim in the present case is squarely foreclosed by prior decision and for that reason is constitutionally insubstantial.
 
 
 10
 A further similarity between Pirincin and the present one, which deserves brief comment, is that each involved, among other things, an attack on a particular election board. In Pirincin, there was an attack on the county election board members for Cuyahoga County. In the instant case, there was an attack on local election officials in Rio Arriba County. In each instance, the complaint was about the same, namely, misconduct on the part of present election officials appointed under the existing law. In Pirincin the three-judge court rejected this claim with the following comment:
 
 
 11
 The May, 1972 "election disaster" in Cuyahoga County does not demonstrate that Ohio's method of selecting county election board members "violates the Constitution." Rather, it is a classic case of a breakdown in the election machinery when
 
 
 12
 the supervisors . . . did not supervise . . . the Director of Elections did not direct, and . . . the Board failed in its responsibilities to keep informed of the activities of the Director and supervisors. 368 F.Supp. at 73.
 
 
 13
 Judgment affirmed.