Rev. Vandroth BACKUS, Dr. R. N. Beck, Robert A. Durant, Roberta D. Durant, Rev. Granville A. Hicks, Rev. Edward H. Thomas, Henry Thomas, and Cleveland H. Townsend, Appellants,

v.

Mrs. Rosa Townsend SPEARS, Member; Dr. Eileen Kirkley, Member, and Dr. L. D. Hendrick, Chairman, individually and as members of the Election Commission of the City of Florence, South Carolina, Appellees.

No. 81–1517.

United States Court of Appeals, Fourth Circuit.

Argued Jan. 4, 1982.

Decided April 29, 1982.

Rehearing Denied June 3, 1982.

398

Frank E. Cain, Jr., Bennettsville, Morde-cai C. Johnson, Florence, for appellants.

James R. Bell, Florence, for appellees.

Before HAYNSWORTH, Senior Circuit Judge, and PHILLIPS and ERVIN, Circuit Judges.

JAMES DICKSON PHILLIPS, Circuit Judge:

In February 1981, the Florence, South Carolina, city council enacted Ordinance 81–3, which set the dates for that year's primary and general city elections and prescribed the method for placing candidates on the ballot by petition. Subsequently, Mordecai Johnson was defeated in the Democratic Party primary election for a seat on the city council. As contemplated by S.C. Code § 7–11–210 (1981 Cum.Supp.), Johnson had pledged in a "loyalty oath" that he would not run in the general election if defeated in the primary. Despite this pledge, after his primary defeat a petition drive was undertaken to have his name placed on the general election ballot. A state court enjoined Johnson from offering or campaigning in the general election, and "specifically prohibited [him] from having his name placed on the ballot...." *Florence County Democratic Party v. Johnson*, No. 81–CP–21–387 (C.P. 12th Jud. Cir. Apr. 23, 1981).[1] Nevertheless, Johnson's supporters submitted a petition that met all

the requirements of Ordinance 81–3, but the Election Commission refused to place Johnson's name on the ballot because of the court order.

On April 29, 1981, Rev. Backus and four other signers of the rejected petition filed suit in federal district court.[2] They sought an order that Johnson's name be placed on the ballot. Alternatively, they asked the district court to enjoin the May 5 general election because Ordinance 81–3 had not been precleared in accordance with § 5 of the Voting Rights Act, 42 U.S.C. § 1973c. On May 1, the plaintiffs filed a motion for a temporary restraining order. At a hearing that day, the district court declined to grant a TRO and dismissed the complaint, and the plaintiffs then gave notice of appeal to this court. We decline to rule on the district court's refusal to grant a TRO, for the issue is now moot. We affirm the dismissal of the claim that Johnson's name be placed on the ballot, but hold that the district court had no jurisdiction to dismiss the claim that the election is invalid because Ordinance 81–3 was not precleared.

I

■ Backus urges us to find that the district court abused its discretion in refusing to grant a temporary restraining order against the May 5, 1981 election. We decline to review this decision. The election has been conducted, so an injunction against conducting it would now be meaningless. Clearly, then, whether or not the election should have been enjoined is a moot question. Though post-election relief, including setting aside the election results, might be warranted if the plaintiffs were to prevail on the merits, it will be equally available if and when that occurs.[3]

1. Counsel has informed us that an appeal of this decision is pending before the South Carolina Supreme Court.

2. All of the eight plaintiffs here are registered voters in Florence. Three of them did not sign the petition, but indicated a desire to vote for Johnson. Since the rights of those signing the petition fully encompass the rights of the other plaintiffs, we limit our discussion to Backus and the other petition signers.

3. The case (as opposed to the decision not to grant a TRO) is not moot for the further reason that the issues properly presented, and their effects on independent candidacies, will persist as the South Carolina statutes are applied in future elections. *See Storer v. Brown*, 415 U.S. 724, 737 n.8, 94 S.Ct. 1274, 1282 n.8, 39 L.Ed.2d 714.

## II

Backus' first cause of action asserts that the election commission ignored state law requiring it to place Johnson, a valid petition candidate, on the ballot or, alternatively, that state law, to the extent it permits the action here, violates the first, thirteenth, fourteenth, and fifteenth amendments of the United States Constitution. The district court recognized that often the proper course for a federal court presented with such a claim is to abstain pending state resolution of the state law question. However, the district court declined to abstain because of the "clarity" with which the federal issues had been adversely decided by previous decisions.

We agree that abstention was unnecessary in this case and that the district court properly dismissed the claim. In order for a federal court not sitting in diversity to respond to a question of local law (either by abstaining or, in appropriate circumstances, determining the state-law issue itself), the local question must be entwined with a *substantial* federal claim. *Anderson v. Babb*, 632 F.2d 300, 305 (4th Cir. 1980). A claim is insubstantial if prior Supreme Court decisions "inescapably render the claims frivolous," *Goosby v. Osser*, 409 U.S. 512, 518, 93 S.Ct. 854, 859, 35 L.Ed.2d 36 (1973). Here, the district court found that Backus had no standing to raise the constitutional claim and, alternatively, that prior decisions "clearly and without question" demonstrate the claim has no merit. Although we find that Backus did have standing to raise the constitutional claim, we agree that the claim is rendered frivolous by prior decisions. We thus conclude that the district court properly dismissed the cause of action without reaching the state law issues. *Cf. Anderson v. Babb*, 632 F.2d at 306 & n.3 (appropriate to determine state law question when intertwined federal question is not frivolous and speedy resolution of issue essential).

The district court determined that signers of a petition do not have a sufficient interest, for standing purposes, in whether their candidate is placed on the ballot since they can still vote for him as a write-in candidate. The court relied on a statement in *White v. West*, No. 74–1709 (D.S.C. Jan. 9, 1976) (three-judge court), that a loyalty-oath provision required of a primary candidate "is not a restriction upon the rights of the voters since they may still write in the name of the defeated candidate, if they so desire." The Supreme Court, however, has recognized that "[t]he realities of the electoral process, however, strongly suggest that 'access' via write-in votes falls far short of access in terms of having the name of the candidate on the ballot." *Lubin v. Panish*, 415 U.S. 709, 719 n.5, 94 S.Ct. 1315, 1321 n.5, 39 L.Ed.2d 702 (1974). Thus the ability to write in Johnson's name does not fully remedy the injury resulting from the rejection of the petition. The precise standing question here is rather unique, in that only signers of a nominating petition, but not the candidate himself, are filing suit. However, we think that the interests[4] of petition signers in associating, promoting, and ultimately electing the candidate of their choice are sufficient to give them a personal stake in seeing that their nominee is placed on the ballot. We thus conclude that Backus and other signers of Johnson's petitions have standing to raise their claims.

Reaching the merits, we conclude that Backus' constitutional claim is frivolous. Under *Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974), South Carolina certainly has the power, as a permissible adjunct to promoting orderly primary elections, to forbid petition candidacies by persons who have been defeated in party primaries. In *Storer* the Supreme Court upheld a California statute forbid-

---

4. These fundamental interests have been variously described as deriving through the fourteenth amendment from the first amendment, *see Storer v. Brown*, 415 U.S. 724, 756, 94 S.Ct. 1274, 1291, 39 L.Ed.2d 714 (1974) (Brennan, J., dissenting); or the ninth amendment, *see Lubin v. Panish*, 415 U.S. 709, 721 n.*, 94 S.Ct. 1315, 1322 n.* 39 L.Ed.2d 702. (Douglas, J., concurring). Whatever the precise source within the constitution, we think that qualified petition signers are within the zone of protected interests.

ding ballot position to independent candidates who voted in other-party primaries or who were registered with a political party within one year of the primary election. The Court reasoned that the requirement "is expressive of a general state policy aimed at maintaining the integrity of the various routes to the ballot." *Id.* at 733, 94 S.Ct. at 1281. South Carolina's prohibition of *candidates* in a primary from appearing independently on the ballot would less impinge on the right to effectively vote than does the California provision upheld in *Storer*; and, correspondingly, the South Carolina statute would even more clearly promote the legitimate state interest in the stability of its political system. Indeed, in the course of upholding California's "disaffiliation" requirement, *Storer* approvingly discusses a California "sore-loser" provision—a provision substantively identical to the South Carolina provision that arguably applies here—as effectuating the valid policy of avoiding intraparty disputes in the general election. *Id.* at 733–35, 94 S.Ct. at 1280–81. *White v. West* recognized that *Storer* virtually commands the result that the South Carolina loyalty oath provision is a valid regulation of the state's election procedures. *Cf. Anderson v. Babb*, 632 F.2d at 305–06 (although disaffiliation provision upheld in *Storer* more restrictive, in general terms, than sore-loser provision, constitutional challenge to sore-loser provision in presidential preference primary not rendered "wholly insubstantial").

Backus attempts to distinguish *Storer* and *White v. West* by pointing out that in those cases the challengers were frustrated candidates, whereas here voters are asserting their right to have their preferred candidate on the ballot, regardless of the candidate's wishes. We find the distinction unpersuasive. Backus wants an exception by which a defeated candidate could avoid an admittedly constitutional "sore loser" law simply by having "independent" voters rather than the candidate himself promote his candidacy. Such an exception would vitiate the law, and is not constitutionally required. We conclude that *Storer v. Brown* unmistakably indicates that a city may constitutionally refuse to accept an otherwise valid petition that seeks to place the name of a defeated primary candidate on the general election ballot.

## III

The district court properly recognized that, sitting as a single judge, it had no power to rule on the merits of a claim alleging the failure to preclear Ordinance 81–3 in accordance with § 5 of the Voting Rights Act, 42 U.S.C. § 1973c. The only power of a single judge in respect of such a claim is to enter a temporary restraining order to preserve the status quo until a three-judge district court can be convened. Nevertheless, at the conclusion of the hearing on the TRO motion, the district court dismissed this cause of action.

A single judge has some limited power to determine whether cases are appropriate for a three-judge court. *See, e.g., Goosby v. Osser*, 409 U.S. 512, 518, 93 S.Ct. 854, 858, 35 L.Ed.2d 36 (1973) (three-judge court not required if prior Supreme Court decisions inescapably render the claims frivolous); *Sharrow v. Peyser*, 443 F.Supp. 321, 323 (S.D.N.Y.1977) (single judge can determine whether complaint presents justiciable controversy and whether plaintiff has standing), *aff'd*, 582 F.2d 1271 (2d Cir. 1978). We do not interpret the district court's dismissal, however, as a determination that the claim is not appropriately decided by a three-judge court. Importantly, Backus never filed a request for a three-judge court, although 28 U.S.C. § 2284(b)(1) clearly contemplates that such a request should ordinarily be made before the single-judge district court determines whether three judges are required. After such a request is made, and unless the single judge determines that a three-judge court is not appropriate,[5] the proper procedure is for the

---

5. Since the issue is not before us, we decline to determine whether a three-judge court is appropriate in this case. Such a determination is properly made in the first instance by the single district judge. If the district judge declines to notify the chief judge that a three-judge court

three-judge court to determine whether the claim has merit. Because the district court, sitting as a single judge, was without jurisdiction to determine the merits of a claim of failure to preclear a change in voting practice, we reverse the dismissal of this cause of action and remand for further proceedings not inconsistent with this opinion.

AFFIRMED IN PART, REVERSED AND REMANDED IN PART.

is needed, this court has jurisdiction to review the decision. *See Schackman v. Arnebergh,*

387 U.S. 427, 87 S.Ct. 1622, 18 L.Ed.2d 865 (1967) (per curiam).