**Jessica D. PARKER, et al., Plaintiffs,**

v.

**UNITED STATES of America, et al., Defendants.**

**No. 5:96–CV–314–H2.**

United States District Court,
E.D. North Carolina,
Western Division.

Nov. 25, 1996.

---

Rosbon D.B. Whedbee, Ahoskie, NC, Robert A. Mineo, Mineo & Mineo, Raleigh, NC, for plaintiffs.

R.A. Renfer, Jr., Asst. U.S. Attorney, Office of U.S. Attorney, Raleigh, NC, for defendants.

## ORDER

MALCOLM J. HOWARD, District Judge.

This matter comes before the court on two motions by Lawrence & Edwards, P.A., Attorneys, and Antonia Lawrence, Attorney-at-Law, (hereinafter the "Applicants"). The Applicants were former legal counsel to one of the plaintiffs in the above case. On November 12, 1996, the Applicants filed a motion to intervene pursuant to Fed.R.Civ.P. 24(a) and a motion for injunctive relief under Fed.R.Civ.P. 65. The Applicants seek to prevent a wrongful death settlement from being disbursed as they contend they are entitled to receive their legal fee from that amount.

## BACKGROUND

On April 23, 1994, an airplane, owned and operated by the Fort Bragg Flying Activity ("FBFA"), an instrumentality of the United States Government, crashed after takeoff in Rocky Mount, North Carolina. Among the passengers killed in the crash were Dr. and Mrs. Jessie Parker, Jr. The Parkers are survived by three children, Mr. Parker's parents, Mr. & Mrs. Jessie Parker, Sr., and Arna Scott, Dr. Parker's sister who is the Administratrix CTA of Dr. Parker's estate. All of these parties subsequently joined together as plaintiffs in a lawsuit against the United States of America and the estate of the airline pilot. That case is currently pending before this court, awaiting details of a negotiated settlement between the parties. The Applicants desire to intervene in this case because they allege they are entitled to a portion of any settlement proceeds given by the United States.

The Applicants allege that on or about April 27, 1996, four days after the airplane crash, Arna Scott contacted their law offices concerning a wrongful death suit against the government. Eventually, on May 17, 1994, Ms. Scott signed a contract retaining the Applicants, and agreeing to pay twenty-five percent of any amount recovered on the claim, "whether by suit, settlement, or in any other manner." The Applicants contend that they successfully negotiated a settlement of $1 million dollars which Ms. Scott promptly rejected. Thereafter, Ms. Scott dismissed the Applicants as her legal counsel. Ms. Scott retained new counsel who then settled with the United States for the same sum of $1 million.

The Applicants ask to intervene in the suit between Dr. Parker's survivors and the United States to protect the $250,000 they allege that they are entitled to under both the contract for legal services and under *quantum meruit*. Furthermore, Applicants ask this court to immediately issue a restraining order, without notice of hearing, restraining

defendants United States and/or Faye Mitchell her capacity as Administratrix of the Estate of Barry Washington, plaintiff's attorneys, or any other governmental agent from releasing or otherwise disbursing settlement proceeds to any plaintiff.

## DISCUSSION

■ In deciding whether to grant a motion for a temporary restraining order or preliminary injunction, a court must weigh four factors: (1) whether the plaintiff will suffer irreparable harm if an injunction is not granted; (2) the injury to the defendant should an injunction be granted; (3) the plaintiff's likelihood of succeeding on the merits of the action; and (4) the public interest. *Hughes Network Systems, Inc. v. InterDigital Communications Corp.*, 17 F.3d 691, 693 (4th Cir.1994); *Blackwelder Furniture Co. v. Seilig Mfg. Co.*, 550 F.2d 189, 195–96 (4th Cir.1977). The irreparable harm to the plaintiff and the harm to the defendant are the two most important factors. *Direx Israel, Ltd. v. Breakthrough Medical Corp.*, 952 F.2d 802, 812 (4th Cir.1991). The decision to issue a temporary restraining order is committed to the sound discretion of the trial court. *See, e.g., Backus v. Spears,* 677 F.2d 397 (4th Cir.1982).

■ This court is concerned by the procedural posture of this case and finds that the issues raised by the Applicants are not ripe for review by this court. The court has before it no evidence that there has indeed been a final settlement between the government and interested parties. Moreover, on November 1, 1996, eleven days before the Applicants' motion to this court was filed, one of the plaintiff's counsel filed in the Nash County Superior Court an action seeking declaratory relief in connection to the contingency fee contract and the estate contract.

Under North Carolina Rules of Professional Conduct, Rule 2.6(e), any lawyer with a fee dispute with a client must

> make reasonable efforts to advise his or her client of the existence of the North Carolina State Bar's program of nonbinding fee arbitration at least 30 days prior to initiating legal proceedings to collect the disputed fee.

This court has before it no evidence that this procedure was followed by the Applicants. In addition, there is scant North Carolina case law on what system of administering its law governing attorney-client fee disputes North Carolina has implemented other than the above cited ethical rule.

■ The fee dispute is governed by North Carolina, not federal, law. There is now pending, a state court action that will decide how North Carolina would apply its domestic policy regarding the fee dispute at issue. The legal contract between Ms. Scott and the Applicants was signed in North Carolina, allegedly breached in North Carolina, and is presumably governed by North Carolina contract law. Where state court adjudication of a dispute based upon predominantly local factors is available to the parties, intervention of a federal court is not necessary. *Alabama Public Serv. Comm'n v. Southern Ry. Co.*, 341 U.S. 341, 349, 71 S.Ct. 762, 768, 95 L.Ed. 1002 (1951).

Since this court abstains from hearing this matter because of the state interest in applying its own administrative procedures, the court need not undergo an elaborate analysis of the *Blackwelder* hardship balancing factors as applied to the Applicants' motion.

The court finds within its discretion, that the plaintiffs have not sufficiently demonstrated that the alleged injury would be appropriately addressed by this court. Therefore, plaintiffs have not shown to the court that a temporary restraining order is necessary and appropriate at this time.

Accordingly, the Applicants' motions to intervene and for a temporary restraining order are hereby DENIED.