**Allan D. SELVY, Plaintiff,**

v.

**DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT, et al., Defendants.**

**No. CIV. 00–40217.**

United States District Court,
E.D. Michigan,
Southern Division.

May 31, 2005.

See, also, 198 F.R.D. 485.

Allan D. Selvy, Detroit, MI, pro se.

John A. Schapka, Detroit City Law Department, Detroit, MI, for Defendants.

*ORDER DENYING PLAINTIFF'S MOTIONS FOR LEAVE TO FILE A COMPLAINT AND MOTION FOR LEAVE TO DEPOSIT MONIES*

GADOLA, District Judge.

Before the Court are Plaintiff's four motions for leave to file a complaint, filed on September 13, October 22, November 8,

and November 15 of 2004. Also before the Court is Plaintiff's motion for leave to deposit monies with the Court, filed on May 16, 2005. For the following reasons, the Court will deny Plaintiff's motions.

## I. Background

Plaintiff has an extensive and unique history in the courts of this jurisdiction. Since 1993 Plaintiff has filed or sought to file more than 43 unsuccessful *pro se* complaints in this district alone, against a remarkable array of defendants. Plaintiff has also filed a great many extraneous motions alongside his complaints. *See* Order, Case No. 03–71835, at n. 1 (July 9, 2003)(Hood, J.). Among the matters with which Plaintiff began his long history in this district were unsuccessful suits against the United States of America, the State of Israel, and the Republic of France, as well as suits against the United States Department of Housing and Urban Development, the United States Postal Service, Al Gore, the Mayor of Detroit, Western Union, and Plaintiff's sister. *Id.*

It soon became apparent that Plaintiff's prolific claims were lacking in evidentiary support. Thus, when Judge John Corbett O'Meara dismissed as frivolous a *pro se* complaint Plaintiff filed against the Department of Health and Human Services in November of 2000, he also enjoined Plaintiff from filing actions in this Court without first paying the appropriate filing fee. *See* Order, Case Nos. 00–74207, 00–74393, 00–7451 and 00–74759 (Nov. 27, 2000) (O'Meara, J.). Plaintiff, however, persisted in filing frivolous lawsuits, including a suit against the Salvation Army.

Plaintiff's habit of filing numerous and frivolous lawsuits with no evidentiary basis also led this Court to hold a show cause hearing on December 6, 2000 as to why Plaintiff had not violated Federal Rule of Civil Procedure 11(b) by filing a baseless administrative complaint against the Department of Housing and Urban Development (HUD) in 1999. *See Selvy v. United States Dep't of Hous. and Urban Dev.,* 198 F.R.D. 485 (E.D.Mich.2000) (Gadola, J.). Plaintiff had claimed that HUD, in a conspiracy with numerous other culprits and a vast organized crime conglomerate, had persecuted Plaintiff and frustrated Plaintiff's business attempts to build houses. *Id.* at 485. This Court concluded that Plaintiff had clearly violated Rule 11(b) and listed the following factors as favoring the imposition of sanctions on Plaintiff:

> Plaintiff's conduct is part of [a] pattern of litigiousness; his ludicrous assertions infected his entire pleading; he has engaged in similar conduct in other litigation; Plaintiff's groundless accusations have consumed considerable amounts of Defendants', and the Court's, time; and, although Plaintiff is not formally trained in the law, the Court notes that he has a vast amount of experience in filing lawsuits and should thus know better than to bring a suit like this.

*Id.* at 486–487.

Yet, this Court decided to only impose a minimal $25.00 fine both because of Plaintiff's limited financial resources and because this Court suspected that "Plaintiff may be so irrational that no monetary sanction would deter this conduct in any event." *Id.* at 487. This Court based its suspicion of Plaintiff's irrationality on its observation that "Plaintiff's demeanor and argument during the hearing indicate that Plaintiff is an emotionally-disturbed person." *Id.* at 486. Thus, the Court also imposed an appropriate non-monetary sanction in the form of a requirement that the Plaintiff must seek leave of Court before filing further complaints in this jurisdiction.[1] *Id.* at 485.

---

1. This explains why Plaintiff's motions for leave to file a complaint are brought using the caption from the 1999 case of *Selvy v. United States Dep't of Hous. and Urban Dev.*

This Court's suspicion as to the deterrent effect of sanctions on Plaintiff's conduct was soon proven accurate. Plaintiff has attempted to institute a plethora of actions against a long list of supposed persecutors and perpetrators of various injustices. Plaintiff has twice more sought to sue the United States and has also attempted to sue the Government of Canada. *See* Order, Case No. 03–71835, n. 1 (July 9, 2003) (Hood, J.). Convinced that numerous levels of government are controlled by organized crime, Plaintiff has twice more attempted to sue the U.S. Navy and the U.S. Postal Service. Plaintiff has filed suits against a number of federal and state agencies, as well as agents of those agencies, such as former Secretary of State Colin Powell as well as both the former and current Governors of Michigan. *Id.* Convinced of massive corruption in Detroit, Plaintiff has also attempted to sue almost all agencies and levels of government of the City of Detroit, including the Mayor, the Department of Water and Sewage, the City Council, and the Police and Fire Departments. *Id.* Finally, Plaintiff has attempted to file suits against nearly every major grocery chain in Michigan, several leading fast food restaurants, a diverse array of coffee companies, and numerous other corporations, such as the Coca–Cola Company. All of Plaintiff's attempted suits have suffered from gross evidentiary difficulties and have been either summarily dismissed or ruled in favor of the defendants. *Id.* Plaintiff's latest attempts to initiate an action in this district have been unsuccessful; he has been denied leave to file a complaint sixteen times.

Unfortunately, Plaintiff does not appear to be content with the enormous misuse of this Court's resources he has thus far squandered. On September 13, October 22, November 8, and November 15 of 2004, Plaintiff filed a series of four motions with this Court, in which he seeks leave to file five new complaints. First, Plaintiff seeks leave to file his second complaint against the Federal Bureau of Investigation (FBI). FBI Mot. (Oct. 22, 2004). Second, Plaintiff again seeks leave to file another complaint against Kwame Kilpatrick, Mayor of Detroit, and other officials located in Detroit. Kilpatrick Mot., Ex. A (Oct. 22, 2004). Third, Plaintiff seeks leave to file another complaint against Governor Jennifer Granholm. Kilpatrick Mot., Ex. B. Fourth, Plaintiff seeks leave to file a complaint against yet another United States Government Agency, the Board of Governors of the Federal Reserve System (FRS), and two agents of Plaintiff's old nemesis, the United States Postal Service. FRS Mot. (Nov. 8, 2004). Finally, Plaintiff seeks leave to file a petition with this court requesting certain court records, though the petition takes the form of a complaint. Case File Mot. (Nov. 15, 2004).

Once again, Plaintiff's complaints appear to be the product of an individual who "appears to have taken leave of his senses." *Selvy,* 198 F.R.D. at 487. Plaintiff has failed to present any facts or authority that could potentially support his claims. Clearly these four motions each represent "another of Mr. Selvy's fanciful and ridiculous lawsuits." Order, Case No. 03–71924, at 2 (June 4, 2003)(Friedman, J.). Plaintiff's motions will be denied as frivolous.

## II. Applicable Law

Generally, a *"pro se* litigant's complaint is to be construed liberally." *Dekoven v. Bell,* 140 F.Supp.2d 748, 754 (E.D.Mich. 2001) (citing *Middleton v. McGinnis,* 860 F.Supp. 391, 392 (E.D.Mich.1994)).

Further, because access to the courts is essential to the enforcement of laws and protection of the values that are rooted deeply in our democratic form of government, this Court may not treat light-

ly the claims of any litigant, even those whose contentions appear fantastic and baseless on their face. Each complaint is entitled to a thorough review to determine whether it has merit and states a federally cognizable claim.

*Id.* at 754. The Court considers the judicial resources expended in following this policy of equal access and justice to be well spent. *Id.*

 Yet, although open access to the Courts is essential, the Supreme Court has noted that, at a certain point, a "[c]ourt's goal of fairly dispensing justice becomes compromised when [it] is forced to devote its limited resources to the processing of repetitious and frivolous requests." *Zatko v. California,* 502 U.S. 16, 17, 112 S.Ct. 355, 116 L.Ed.2d 293 (1991) (quotations omitted). The Court's requirement to examine each claim, therefore, is balanced by the Court's "initial and continuing obligation under Fed.R.Civ.P. 12(b)(1) to review and dismiss cases in which the Court lacks subject matter jurisdiction." *Dekoven,* 140 F.Supp.2d at 748. Thus, "a district court may, at any time, *sua sponte* dismiss a complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure when the allegations of a complaint are totally implausible, attenuated, unsubstantial, frivolous, devoid of merit, or no longer open to discussion." *Id.* at 755 (quoting *Apple v. Glenn,* 183 F.3d 477, 479 (6th Cir.1999)). "A complaint is considered frivolous if it lacks an arguable basis in law or fact." *DeKoven,* 140 F.Supp.2d at 755. A claim lacks an arguable basis in fact if it is "premised on clearly baseless factual allegations that describe fantastic or delusional scenarios, rising to the level of the irrational or the wholly incredible." *Tenn. ex rel. David Francis Fair v. Comm'r,* 2004 WL 3079879, 94 A.F.T.R.2d (RIA) 2002–7038 (E.D.Tenn.2004)(citing *Best v. Kelly,* 39 F.3d 328, 330–31 (D.C.Cir.1994)). A claim lacks an arguable basis in law if it is not legally plausible and is "based on legal theories that are indisputably meritless." *Dekoven,* 140 F.Supp.2d at 748 (quotations omitted).

Frivolous claims must be "totally implausible." *Apple,* 183 F.3d at 479. Even so, factual claims of doubtful or questionable merit that are only implausible, as opposed to "totally implausible," do not qualify as frivolous. *Tenn. ex rel. David Francis Fair,* 2004 WL 3079879, 94 A.F.T.R.2d (RIA) 2004–7038 (citing *Goosby v. Osser,* 409 U.S. 512, 518, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973); *Best,* 39 F.3d at 330–31). Doubtful claims that are at least theoretically within the realm of possibility are nevertheless frivolous if the plaintiff's "basic premise, which undergirds his entire complaint," is "fantastic and delusional." *Dekoven,* 140 F.Supp.2d at 761.

In *DeKoven,* for example, the plaintiff's complaint included seemingly plausible allegations of improper conduct by prison employees. Yet, the Court deemed these allegations frivolous because they stemmed from the plaintiff's absurd basic premise that he was "the Messiah–God." *Id.* at 761–762. The Court explained that the "plaintiff's claim to be the Messiah–God is sufficiently irrational and wholly incredible as to render each of his subsidiary claims factually baseless." *Id.* at 763.

Similarly, in *Robinson v. Love,* the Court held as frivolous the plaintiff's allegations which stemmed from his belief that "his relatives, neighbors, and friends [were] being held hostage by prison staff members and that he [was] subjected to witchcraft and attempts to poison him with cyanide." *Robinson v. Love,* 155 F.R.D. 535, 535 (E.D.Pa.1994). The Court dismissed his claims as frivolous because if claims, "while theoretically within the realm of the possible, stand genuinely outside the common experience of humankind,

such claims may also be dismissed as irrational or wholly incredible." *Id.*

## III. Analysis

### A. Fantastic and Delusional Basic Premise

■ The claims in all five of Plaintiff's new complaints, like those in Plaintiff's many previous complaints, are subsidiary to a wholly irrational basic premise. The Plaintiff's claims are premised upon the fantastic idea that a vast international criminal consortium run by what he terms "the Freemasonry movement" has wreaked various injustices on the people of Detroit, the United States, and the whole world and has persecuted petitioner since he was a child.

The source of many of the Plaintiff's and the world's problems, explains Plaintiff, is the "International Freemasonry movement" headquartered in the southern United States. Kilpatrick Mot., Ex. B at 3–4. Plaintiff claims that "the Freemasonry movement is synonymous with the International Crime Consortium," which is a vast international consortium of underworld organizations, which he calls the "criminal syndicate." FBI Mot., Attached Compl. at 11; *see also* Kilpatrick Mot., Ex. B at 3–4. This "criminal syndicate" has grown in power "by infiltrating government institutions, social organizations, commercial organizations, educational institutions, athletic organizations, religious groups, [and] peer groups." Kilpatrick Mot., Ex. B at 5. Despite maintaining that the "criminal syndicate" includes, among others, the Jewish, Japanese, Islamic, Hispanic, and the "American Negro" underworld, Plaintiff insists that this Freemason criminal consortium's ultimate goal is the "establishment of totalitarian governments ruled by White Supremacists" so as to achieve the "total control of the World's wealth." FBI Mot., Attached Compl. at 11–12. Plaintiff also explains that, in furtherance of this goal, the criminal syndicate has perpetrated numerous crimes including the civil rights abuses of the 1960s, the Waco disaster, the September 11th attacks, the allegedly destabilizing efforts of the antiwar movement and the drug culture, the Oklahoma City bombing, and the August 1992 shootout at Ruby Ridge. *Id.* at 11–18.

Plaintiff believes that, for reasons left unexplained, as a child he became a target of the Freemasons' criminal syndicate and has "been racially and sexually persecuted by members of the criminal syndicate in the United States" ever since. *Id.* at 3. Plaintiff, for example, claims that the Freemasons prevented him from succeeding in school, frustrated his many business endeavors, constantly harassed him, vandalized and destroyed his property, and arranged and covered up the murders of his brothers and his grandmother. Kilpatrick Mot., Ex. B at 5; Case File Mot., Ex. I at 3–11.

Plaintiff's premise of a massive Freemasonry conspiracy of which he is a victim is clearly fantastic and delusional like the premise of the plaintiff in *DeKoven.* Moreover, this premise is theoretically impossible and plunges much farther into the realm of fantasy than the comparatively small allegations of conspiracy made by the plaintiff in *Robinson.* Plaintiff's premise is so totally implausible, so fanciful and so wholly incredible that it stands far and away "outside the common experience of humankind." *Robinson,* 155 F.R.D. at 535. An analysis of the five suits Plaintiff now seeks leave to bring indicates that all the claims they contain are subsidiary to an incredible basic premise of a Freemasonry conspiracy.

### B. Complaint Against the FBI.

Plaintiff seeks leave to file a suit seeking a writ of mandamus directing the FBI to

investigate the alleged robbery and murder of his grandmother and brothers and the alleged corruption of the judicial system of the State of New York and the Suffolk County Police Department. FBI Mot. at 2, 8. Plaintiff claims that the writ is necessary because the FBI is compromised by being "infiltrated by agents of the Freemasonry movement, or criminal syndicate, and agents for hostile foreign governments." *Id.* at 20. He claims that this infiltration has resulted in a national failure of the FBI to operate effectively and to prevent the string of disasters going back to the 1960's mentioned above. *Id.* at 11–18. Plaintiff's claims against the FBI are clearly subsidiary to his belief in a Freemasonry conspiracy and are so incredible, so broad in scope, and so lacking in factual support as to be clearly irrational and without basis.

### C. Petition for Free Copy of Case File

Plaintiff seeks leave to file a petition, in the form of a complaint, to be granted a free copy of, or to be allowed to purchase through monthly installments, the complete case file for the *United States Dept. of Justice v. City of Detroit*, No. 03–72258. Case File Mot., Ex. I at 16. Plaintiff intends to use the information in the case file "to redress almost fifteen years of my being persecuted by the Freemasonry movement while a resident of the City of Detroit." *Id.* at 5. Plaintiff believes that the government officials controlling Detroit are members of the Freemasonry's criminal syndicate and have caused a "state of anarchy" in Detroit. *Id.* at 2–3, 14. Plaintiff's claims here are similar to his frivolous claims in the case against HUD under which he brings this motion and to his claims in many of his current and previous motions. They clearly stem from his irrational belief that he is the victim of a massive Freemasonry conspiracy.

Furthermore, Plaintiff has not been prevented from obtaining the documents he seeks. As a member of the public, he may take advantage of the standard means for obtaining court documents.

### D. Complaint Against The Federal Reserve Board

This motion is for leave to file a claim for damages stemming from the FRS's failure to delivery $14.00 worth of documents that Plaintiff alleges he ordered and paid for, but did not receive. FRS Mot., Ex. A at 3–5. Plaintiff wishes to investigate the Federal Reserve Board and wants the documents to "learn more about the Board's failure to adequately manage the Nation's banking system." *Id.* at 5. Plaintiff reveals yet again that his claims here are a product of his belief in a massive Freemasonry conspiracy. He claims that the money order receipt that proves he paid for the documents was stolen from his house by a certain Henry Scott, who he has often claimed is a Freemason agent. *Id.* at 5; *see also* FBI Mot., Attached Compl. at 6; Kilpatrick Mot., Ex. B at 15. Plaintiff explains that Scott, "a mentally deranged sadist who is an agent for the criminal syndicate," also has complete access to all post offices in the United States and has stolen documents from various courts. FRS Mot., Ex. A at 4–5. Plaintiff, therefore, also requests an order requiring members of the U.S. Postal Service to bar those who are not employees from their offices and to prosecute Henry Scott for his alleged misconduct. *Id.* at 6. Plaintiff's claims here are frivolous, being based upon an the same irrational premise as the others.

### E. Complaint Against Jennifer Granholm, Governor of Michigan

Plaintiff seeks leave to file a complaint against Michigan's Governor, Jennifer

Granholm, that seeks an order requiring her to comply with Article V, Section 10 of the Michigan Constitution of 1963 and, after a proper hearing, remove Mayor Kwame Kilpatrick from the office of the Mayor of the City of Detroit for "gross neglect of duty and other acts of misfeasance." Kilpatrick Mot., Ex. B at 17. This motion again stems from Plaintiff's belief in the corruption of government officials at all levels in Detroit which Plaintiff believes is controlled by the criminal syndicate. *Id.* at 3. Plaintiff claims that Mayor Kilpatrick conspired with organized crime and the corrupt Detroit Police Department to destroy by demolition or arson thousands of properties in Detroit, including the four properties Plaintiff allegedly purchased for business purposes. *Id.* at 7–8. Plaintiff also alleges that Mayor Kilpatrick was involved in the murder of his brothers, James and Gordon Selvy, and with interfering with the subsequent investigations. *Id.* at 9. He suggests that this was part of a larger pattern of corruption and explains that Mayor Kwame Kilpatrick was directed by elements of the criminal syndicate in these actions. *Id.* at 6–9. Yet again, Petitioner's claims stem from his fantastical belief that he has been persecuted by agents of a vast Freemasonry conspiracy.

### F. Complaint Against Mayor Kwame Kilpatrick et. al.

Plaintiff seeks leave to file a suit for $1,000,000 in damages against Detroit Mayor Kwame Kilpatrick and numerous other state and city officials in Detroit. Kilpatrick Mot., Ex. A at 2–4. These officials are Mary Beth Kelly, the Chief Judge of Wayne County Circuit Court, Ruth Carter, the Corporation Counsel of the City of Detroit, Bernard Youngblood, the Register of Deeds of Wayne County, Cathy M. Garret, the Wayne County Clerk and the Clerk of the Wayne County Circuit Court, Hadiya El Shabazz, an agent for Michigan Capital Fund For Housing, Phyllis James, the former Corporation Counsel of the City of Detroit, Henry Scott, an agent for the Michigan Capital Fund for Housing, and Raymond J. Wojtowicz the Treasurer of Wayne County. Kilpatrick Mot., Ex. A at 3–4. Plaintiff claims that these officials conspired with organized crime in using various illicit means to force him from, and defraud him of, his real estate properties so as "to destroy my business in order to further organized crimes monopoly control of the building and real estate industry." *Id.* at 8. Nothing more needs to be said as the pattern is obvious.

### IV. Conclusion

All five of Plaintiff's new complaints, besides containing legal insufficiencies, contain claims that are based on Plaintiff's belief that he is the victim of an enormous Freemasonry conspiracy. Because this premise is "fantastic and delusional," and indisputably stands "outside the common experience of humankind," all claims subsidiary to it are frivolous. *Dekoven,* 140 F.Supp.2d at 761; *Robinson,* 155 F.R.D. at 535. Plaintiff's frivolous lawsuits "consume a great deal of time, money and effort on behalf of the court and the defendants to review, attempt to comprehend, and eventually dispose of." Order, Case No. 03–71924, at 1 (June 4, 2003)(Friedman, J.). Plaintiff should cease consuming the Court's limited resources with patently frivolous motions. Plaintiff's motions will once again be dismissed as frivolous and entirely devoid of merit.

Finally, Plaintiff requests leave of the Court to deposit $14.00 with the Court, the amount Plaintiff allegedly paid for the FRS publications involved in his complaint against the Federal Reserve Board. Plaintiff claims that the payment is disputed by the FRS. Deposit Mot. at 2 (May 16, 2005). In his motion for leave to deposit,

Plaintiff reiterates his belief that U.S. Postal Service is controlled by the criminal syndicate and that Henry Scott routinely steals mail from the U.S. Post Office in Detroit. *Id.* at 2. For the reasons discussed above, and because the denial of Plaintiff's motion for leave to file a complaint against the Federal Reserve Board renders moot his need to deposit monies with the Court, the Court will deny his motion for leave to deposit.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Plaintiff's motions for leave to file a complaint [docket entries 45, 47, 48, and 49] are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to deposit monies [docket entry 51] is **DENIED**.

**SO ORDERED.**